Lucille S. Kos, Minor, by Michael Kos, Her Father and Next Friend, and Michael Kos, Plaintiffs, v. Catholic Bishop of Chicago et al., Defendants.

Lucille S. Kos, Minor, by Michael Kos, Her Father and Next Friend, and Michael Kos, Appellants, v. Catholic Bishop of Chicago and Theodore Czastka, Appellees.

Gen. No. 41,572.

Opinion filed December 30, 1942.

Samuel A. Harper, Walter Sczudlo, Gustave J. Blasi and Thomas S. Stearns, all of Chicago, for appellants.

Heth, Lister & Flynn, of Chicago, for appellees; Thomas E. Griffin, of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

Plaintiffs appeal from an order of the superior court allowing the motion of the Catholic Bishop of Chicago, a corporation sole, and Theodore Czastka, its agent, to strike the amended complaint, and dismissing the suit as to them, allowing the action to stand only as

to Robert Sliwa and Leonard Gurtowski, two minors, the remaining defendants.

The amended complaint consists of three counts, the first of which alleged that plaintiff Lucille S. Kos, age six and one-half years, at the solicitation and invitation of the Catholic Bishop, was enrolled as a student at St. Wenceslaus Parochial School in Chicago, owned and operated by the Catholic Bishop through its agent, Theodore Czastka; that there was set apart for the convenience of the students a classroom in which they might eat the lunches which they brought with them; that the defendants knew said room contained heavy and dirty objects, including a handbrush used for cleaning the floor, and also knew generally, or could have known, that the older boy pupils, particularly defendants Robert Sliwa and Leonard Gurtowski, while on and about the school premises, habitually fought, quarreled and "rough-housed" with each other and carelessly and negligently threw objects at each other and at other pupils, and knew, or by the exercise of prudence should have known, that it was dangerous and unsafe for plaintiff Lucille S. Kos to eat her lunch in said room with these older pupils unless it was constantly supervised; that they failed and refused to supervise the room and permitted the handbrush to lie loose and unconfined in the room; that Lucille and the two boys had gone to the room on the day of the accident to eat their lunches and while there defendant Robert Sliwa threw the handbrush at defendant Leonard Gurtowski, hitting plaintiff Lucille S. Kos, and causing injury to her right eye.

Count 2, alleging substantially the same facts, is directed against the Catholic Bishop alone, and alleges that a contract existed between him and plaintiffs by the terms of which the Catholic Bishop agreed, for a consideration, to furnish reasonably safe premises to Lucille, and to look after her morals, health and safety while in and about the school; that Lucille promised

and agreed to abide by the rules and regulations of the school, and complied with her undertaking, but by reason of the facts stated, the Catholic Bishop breached the agreement.

Count 3, which is not the subject matter of this appeal, alleges negligence on the part of the two defendants, Robert Sliwa and Leonard Gurtowski, against whom plaintiffs' cause of action is still pending.

Plaintiffs take the position that count 1 of the amended complaint states a good cause of action against the Catholic Bishop and its agent because it was actionable negligence (1) to permit the brush to remain in the lunchroom where it could be thrown by a mischievous boy, and (2) to permit the pupils to eat their lunches without supervision; and their counsel say that because Illinois has followed the doctrine that a school operated as a charitable institution is not liable for its torts, and a public school, partaking of the immunity of the sovereign State, is also not liable, they have been unable to find in this State any decision discussing specifically the duty to his pupils of a person who owns, maintains or operates a school. Defendants' counsel add that they likewise have been unable to find any such authority. However, plaintiffs cite, without discussion, numerous cases in other jurisdictions wherein the subject of supervision of school children is considered. Most of these cases involve inherently dangerous instrumentalities or attractive nuisances against which the authorities failed to provide protection, and the courts considered the necessity for supervision in the light of specific dangers which had been brought directly to the attention of the school authorities. Thus in *Buzzard v. East Lake School Dist.*, 34 Cal. App. (2d) 316, 93 P. (2d) 233, brought under a California statute, the instructor of a class in physical education had a group of girls on the school premises, engaged in a game called "kick-the-can." Two boys rode their bicycles in and out

among the girls in the presence of the instructor, who did nothing about it, and ultimately one of the boys ran into and injured the plaintiff. With respect to these circumstances, the court pointed out that the boys had been in the habit of riding their bicycles among the girls for several months prior to the time of the accident, with the full knowledge of the instructor, and that no effort had been made to stop that dangerous practice, and then proceeded to distinguish the facts in that case from those in which the school authorities had no knowledge of the dangerous practice, and said: ''Each of the cases relied on by the appellant were properly determined upon the particular facts involved therein. They may be readily distinguished from the circumstances upon which the present case was decided. Most of the last cited cases were founded on claims for injuries sustained by pupils on account of the conduct of other students engaged in playing games on the school premises, over which the supervisors of sports had no control, and which acts could not have been reasonably anticipated.''

In *Jackson v. County Council and Chappell,* 28 T. L. R. 359, aff'g 28 T. L. R. 66, another case cited by plaintiffs, a contractor allowed a truck, loaded with a mixture of sand and lime, to remain in the corner of a school playground. The master of the school, considering it dangerous, had given instructions to the caretaker to have it removed, but his instructions were not obeyed. On trial the master admitted that he considered the materials left in the playground as dangerous to the pupils, and for that reason had ordered them removed, and it was on his admission that the court of appeals in England affirmed a finding for plaintiff, saying that the defendant admitted that the thing that caused the injury was a dangerous instrument. In that respect it was obviously different from the handbrush in the case at bar.

In *Thompson v. Board of Education of City of New York,* 280 N. Y. 92, 19 N. E. (2d) 796, a mischievous boy, who was running down a stairway during class dismissal and while the teacher was in another part of the building, injured plaintiff, and finding the issues for defendant, the court observed that "Appellant could not personally attend to each class at the same time, nor was any such duty imposed upon him."

In *Weldy v. Oakland High School Dist. of Alameda County,* 19 Cal. App. (2d) 429, 65 P. (2d) 851, a student was injured by a glass bottle thrown by another student sitting behind him in the football stands. Plaintiff there charged that the football game was under the direction and management of defendant school, that the students sitting behind plaintiff had been engaged in rowdyism and were throwing various objects at those seated below; that the school district negligently and carelessly failed to exercise supervision over the conduct of the students, and as a result thereof, plaintiff was injured. The court held that the complaint failed to state a cause of action because it did not allege that the school authorities had knowledge of this specific rowdyism, and having such knowledge, failed to stop it, and held that the law does not make school authorities insurers of the safety of pupils at play or elsewhere.

Also in California, in *Whiteford v. Yuba City Union High School Dist.,* 117 Cal. App. 462, 4 P. (2d) 266, a pupil deliberately threw an orange at plaintiff, injuring him. The court held that the school was not liable; that oranges and such missiles could doubtless be found on any school ground; and that defendant was not liable because plaintiff's injury was the result of the deliberate act of one of its pupils.

In the case at bar the amended complaint merely avers that the brush in question was "a heavy, dirty object, to-wit: a hand brush used for cleaning the floor"; it does not state where the brush was kept,

whether on the floor, the window sill, in a cupboard or on a desk, and it may therefore fairly be assumed that the brush was of the ordinary type, kept in a place where it would be available for use in cleaning the floors after the lunch period. No cases are cited imposing upon the school authorities the duty of removing objects regularly used and necessary in maintaining the school premises, and as defendants' counsel point out, if such duty were imposed by law, then inkwells, erasers, pens, books, bottles and other objects could never be left in a schoolroom, but would all have to be removed on the theory that some mischievous boy might convert them into harmful objects by throwing them at other pupils. The brush in question was inherently a harmless object, necessarily used for cleaning the floors, and we fail to conceive how its mere presence in the lunchroom could be held to render the room unsafe or constitute negligence on the part of defendants.

The contention that defendants are rendered liable because of their failure to exercise supervision over the pupils at the time they were eating their lunches is likewise untenable, and no cases are cited holding that such a duty exists. If school authorities were obliged to stand guard over children on the school premises at all times to protect them against the possible acts of mischievous pupils, it would be fairly impossible to conduct schools without peril to the authorities who maintain and operate them.

Moreover, as defendants' counsel argue, the failure of defendants to remove the brush in question or to provide supervision of the pupils during the lunch hour was not the proximate cause of plaintiff Lucille Kos's injury; it was brought about through the intervening act of Robert Sliwa, who is alleged to have deliberately thrown the brush. Cases cited by defendants sustain this contention. In *Malmberg v. Bartos,* 83 Ill. App. 481, defendant, a storekeeper, had un-

loaded ice from a wagon in front of his store and was using an ax to chop the ice before carrying it in. He left the ax lying on the sidewalk between trips. Plaintiff, a girl seven years old, was attracted to the scene, along with a crowd of children, and wanted a small piece of chipped ice. Defendant's son ordered her not to take it. Plaintiff persisted, however, and defendant's son picked up the ax and chopped off her finger. Plaintiff there made contentions similar to those urged in the case at bar, but the court in affirming a directed verdict for defendant, held that although an ax may be a dangerous instrument in the hands of a child, it would not necessarily follow that the defendant was guilty of negligence, or if he was, that his negligence was the proximate cause of the injury; that the presence of the ax itself did not serve to create any danger to children or to passers-by, and the mere act of leaving it temporarily upon the sidewalk was not negligence in and of itself; and concluded that the cause of the injury was not that the ax was in reach of the boy, but that it was his wilful intention to injure the plaintiff for trying to pick up a piece of ice. We think that decision is applicable in principle to the circumstances of the case at bar. *Taylor v. Kelvin,* 121 N. J. L. 142, 1 A. (2d) 433; *Hartnett v. Boston Store of Chicago,* 185 Ill. App. 332, and *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270, are to the same effect. From these circumstances we conclude that count 1 of the amended complaint stated no cause of action against these defendants.

Under count 2 plaintiffs contend that the corporation defendant undertook, *inter alia,* to furnish reasonably safe premises and thereby incurred a contractual duty; that it breached the contract by failing to remove from the lunchroom the brush in question, and by failing to provide supervision of the pupils during the lunch hour; that it thereby became liable for all damages which naturally arose from a breach of the

agreement which the parties could be presumed to have contemplated as naturally arising from such breach; and that it was for the jury and not the court to determine whether the pleaded facts constitute a breach of its contractual obligation by defendant corporation. In *Armstrong v. Wesley Hospital,* 170 Ill. App. 81, which is one of three cases relied upon by plaintiffs in support of these contentions, the court held that a charitable institution, although exempt from tort liability, might be held for a breach of its contract, and it approved the difference noted in *Ward v. St. Vincent's Hospital,* 39 App. Div. 624, 57 N. Y. Supp. 784 (another case cited by plaintiffs), between the rule in an action to recover for personal injuries occasioned by the negligence of an employee of a charitable institution, and an action to recover for the breach of an agreement. The question involved in the *Ward* case was whether the court might determine, as a matter of law, if the alleged facts constituted a breach of contract. The issue was whether or not the breach had been proved, and the court held that to be a question for the jury.

The law is too well settled to require the citation of authority that a court may determine whether or not, as a matter of law, the facts alleged in a complaint constitute a breach of an agreement. We think that plaintiffs' second count fails to state a cause of action because the intervening deliberate act of Robert Sliwa, and not the breach of defendants' contract to provide reasonably safe premises, was the proximate cause of Lucille Kos's injury. In these circumstances the court had the right to determine, as a matter of law, whether or not the facts alleged in the amended complaint constituted a breach of contract and thus stated a cause of action against defendants. The court determined this question adversely to plaintiffs. The judgment is affirmed.                   *Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.