[Civ. No. 5548. Fourth Dist. Oct. 30, 1957.]

ALBERT ANTONIO LUNA, a Minor, etc., et al., Appellants, v. THE NEEDLES ELEMENTARY SCHOOL DISTRICT, Respondent.

Harold Payne for Appellants.

King & Mussell for Respondent.

BARNARD, P. J.—This is an action for damages for an injury suffered by the minor plaintiff, a pupil at a kindergarten maintained by the defendant, which resulted in the loss of his left index finger to the first joint. The accident happened on September 26, 1952, which was the minor plaintiff's fifth birthday. It appears from a map in evidence that this kindergarten building was toward the rear of the school grounds, and there was a black-top sidewalk leading from

the building across a lawn to the main entrance to the grounds, where the sister of the minor plaintiff testified that they would park and wait for the child. There was a cement block wall surrounding the kindergarten playground, which separated it from the general playground. There was a gate across this black-top sidewalk, extending from one end of this wall to a wall of the kindergarten room. The accident happened at this gate, when the minor plaintiff was climbing this wall and another boy pushed the gate one way or another. It does not appear from the evidence just how the accident happened or exactly where the boy's finger was when it was injured.

The complaint alleged that the boy's finger was cut or pinched off and that he suffered this injury by reason of the dangerous condition and imperfect construction of this gate, and "by reason of the negligence of said defendant district and its employees in conducting and supervising said kindergarten school."

At the time of the trial, April 2, 1956, the minor plaintiff was 8½ years old. The boy's sister testified that her mother called her and asked her to go and see about this matter, and that she met the boy and the nurse at the doctor's office. She also testified about what later happened at their home. The boy's mother testified that the boy's teacher phoned her about five minutes to three on that day and that "I called my daughter to go after him." She also testified that the boy went back to school in about a week and a half, and that since the accident "he feels kind of ashamed and shy, he is kind of shyish."

The only evidence relating to the accident itself or how or why it happened consists of the map of the school grounds, several photographs of the gate and the near-by kindergarten room, and the testimony of the minor plaintiff. The gate appears to be a well constructed iron or steel gate of the usual type, and opened by a spring lever the handle of which is well above the top of the gate. The gate is apparently some 20 or 30 feet from a door into the kindergarten room.

The minor plaintiff first testified that he did not remember the day he was hurt, and did not remember anything about it. He later testified that he was going to this kindergarten but did not remember how long he had been going; that he hurt his finger in the gate; that he was climbing up the fence and was going to sit on top of it; that as he was climbing on the fence the gate was open; and that other children were there. When asked how his finger got hurt he replied: "He

was swinging the gate open and this led in the gate and then he smashed it." He further testified that as he was climbing up his finger slipped into the gate and "he closed it"; that he could not see his teacher when his finger was hurt; that she was inside the room; that the room was by the gate; that there were no other teachers at the place where the accident happened; that he did not remember what his teacher did after he hurt his finger; that nobody else came to help him; and that somebody called his mother and he went to the doctor's office. On cross-examination he testified that this gate kept the big kids from coming into the little kids' yard; that Miss Gather was the teacher he had that day; that she came right over after he got hurt and helped him; that she sometimes watched the kids in the kindergarten yard; that he saw Miss Gather before he got hurt; that "she was by the door"; that she was "in the room"; that no other teacher was there; that he did not know how long he had been outdoors before the accident happened; that he did not remember what he was doing before he went over to the gate; that he had not been in the kindergarten room at all on that day; that he had been outdoors all of the time; and that Miss Gather had told him, and told all the kids, not to play on the gate. He was asked "Did some little kid swing on the gate and catch your finger in it?" to which he replied "Yes." He then testified that he reached his hand up on top of the fence trying to get up and his hand slipped; that about the time it slipped another kid moved the gate and caught his finger; and that this is what happened to him.

After producing this evidence the plaintiffs rested and the defendant moved for a nonsuit on the grounds that there was no proof that any dangerous or defective condition existed of which the school board had any knowledge, and that there was no proof of proper service of a claim as required by law. In the argument which followed the plaintiffs offered to produce further evidence as to a proper serving of a claim, and the other issue as to whether there was any negligence on the part of the defendant in failing to have proper supervision at the time and place in question was also fully argued and considered. The court pointed out that there was no evidence of any defective condition with respect to this wall or gate; that there was no evidence that the accident occurred at recess time, or that the boy was on the playground in connection with school activities; that there was no evidence concerning supervision, or its necessity, or whether or not supervision of any

kind was furnished; and that the only evidence was that there were no teachers in the immediate vicinity at the time the accident occurred. The court stated that he would grant the motion upon all of the grounds which had been urged by the defendant. He further stated that he would allow the plaintiffs to reopen the case to offer further proof relative to the presentation of the claim if the nonsuit were being granted on the ground that a claim had not been properly presented, but that he would deny the motion to reopen the case for that purpose since no sufficient evidence had been presented with respect to the other matters. A minute order was entered reciting that a "motion for Judgment of nonsuit is by the court granted on each of the grounds as stated"; a motion for a new trial was denied; and the plaintiffs have appealed "from the judgment and order therein entered."

The appellants first contend that, in view of the overwhelming evidence showing the district's negligence in failing to provide proper supervision of the pupils in the kindergarten, the court's action in granting the nonsuit may have been based on a supposed lack of evidence with respect to filing and serving the claim for damages. It clearly appears from the record that this matter had no controlling effect on the order made.

It is next contended that the evidence was sufficient to show negligence of the school district in the matter of supervision. It is argued that the fact that only the teacher came when the boy was hurt shows that there was no other person, such as a playground director, actually present on duty; that the gate was swinging open and children were swinging on the gate and climbing on the fence although they had been told not to do so; and that even if some other person were present who was supposed to be on duty he was not giving the attention and supervision which was required, and such failure was the cause of the accident. It is further contended that the same evidence which supports the claim of negligence supports the claim that this property was in a dangerous and defective condition. It is argued that the map shows that the gate in question is in a cement and masonry fence surrounding the kindergarten playground; that it is a service gate only and not intended for use of the teachers and pupils; that a heavy steel gate which can easily be opened by kindergarten children is a dangerous equipment on a kindergarten playground; that this fact was recognized because the teacher had told the children that they must not climb on the fence

or play on the gate; that this gate should have been constructed and maintained in such a way that it could not be opened and closed by the kindergarten pupils; and that the accident occurred because of the dangerous and defective condition of this gate, or by the negligence of the district in failing to provide proper supervision of the kindergarten pupils.

There is no evidence that would justify the inference that this gate was improperly designed or that it was in a dangerous or defective condition, considered in relation to its ordinary, usual and customary use, which should have been known to the defendant district. (*Woodman* v. *Hemet Union High Sch. Dist.*, 136 Cal.App. 544 [29 P.2d 257].) There is no evidence that any accident had previously happened in that connection or that the respondent had notice of any dangerous character in the existing condition. (*Howard* v. *City of Fresno*, 22 Cal.App.2d 41 [70 P.2d 502].) The danger of having a finger caught by opening or closing this gate was exactly the same as that which appears in connection with the opening or closing of any door or gate.

The standard of care required of any officer or employee of such a school is that which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances. (*Pirkle* v. *Oakdale Union Grammar Sch. Dist.*, 40 Cal.2d 207 [253 P.2d 1].) There is no evidence here as to whether this accident occurred at a recess, whether school had closed for the day, or whether this boy had previously gone out to the main entrance. There is no evidence that the gate was used only as a service gate or that it was not used for the ingress or egress of kindergarten pupils. So far as appears from the record, school may have closed and there may have been no more than two other pupils there, aside from the boy who was hurt. The accident occurred while the boy was climbing the wall (although he had been told not to do so), by the action of another boy who may have been merely on his way out of the gate. There is no evidence as to what the teacher was doing at the time or how long she had been in the room. There was no substantial evidence to show negligence on the part of the teacher, and negligence could not be inferred from the mere fact that the accident occurred on school ground while the teacher was not at the particular spot at that moment. There is no evidence that would justify the inference that this teacher should reasonably have expected not only that this boy would climb

this wall but that his hand would slip at the very moment another boy was moving the gate. (*Ford* v. *Riverside City Sch. Dist.*, 121 Cal.App.2d 554 [263 P.2d 626].) It was encumbent upon the appellants to produce evidence showing some defective condition in this gate, or evidence on the matter of supervision which would justify an inference that there was a failure in that respect. No substantial evidence justifying such inferences was produced, and no offer was made to produce other evidence on these issues. This is the sort of accident that could happen at any door or gate, one which could well happen in spite of any possible supervision, and there was no substantial evidence that this injury was proximately caused by any negligence on the part of the respondent or its employees. Under the circumstances shown by the record the motion for a nonsuit was properly granted.

The judgment and order appealed from is affirmed.

Griffin, J., and Stone, J. pro tem.,* concurred.

A petition for a rehearing was denied November 20, 1957, and appellants' petition for a hearing by the Supreme Court was denied December 23, 1957. Carter, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.