399 P.2d 669

Bernard LeROY, Special Administrator
for the Estate of Edward Maxwell
Pacheco, Deceased, Appellant,

**v.**

Morris Henry PHILLIPS and Jane Doe Phil-
lips, husband and wife, Appellees.

No. 7720.

Supreme Court of Arizona.

In Division.

March 4, 1965.

**264**

Morgan, Marks & Rogers, Tucson, for appellant.

John Claborne, Tucson, for appellees.

McFARLAND, Justice.

Appellant was plaintiff in a death action which arose out of an accident in which defendant's car struck and killed a pedestrian. Plaintiff is administrator of the estate of the deceased pedestrian. The trial judge directed a verdict in favor of defendant at the end of plaintiff's case, and it is from the judgment entered on that verdict that plaintiff appeals. We must consider the evidence and the inferences to be drawn from the evidence in the light most favorable to the party against whom the verdict was directed—in this case, the plaintiff. Spain v. Kelland, 93 Ariz. 172, 379 P.2d 149.

The accident happened about midnight at the intersection of Flores Street and Stone Avenue in Tucson. The deceased was riding as a passenger on a motor scooter heading east on Flores Street and driven by James P. Shoumaker. The scooter had been stopped for a stop sign, and was being turned south on Stone Avenue when it tipped over into the street, and threw the driver and the deceased into the intersection. The driver and the deceased got up, and the driver started to wheel the scooter to the side of the road. When he was hit the deceased was either pushing the scooter from behind or was picking up tools which had been strewn in the intersection.

Witness Wesley Riba testified that defendant was driving south on Stone Avenue, and had been going at a constant speed of from 20 to 30 miles per hour for several blocks. Witness Riba also testified that the speed limit was 30 or 35 miles per hour. Officer Robert E. Harris testified that defendant laid down skidmarks of 50 feet with his left wheel and 66 feet with his right wheel. Thirty-eight feet of the skidmarks of his left wheel and 52 feet of the skidmarks of the right wheel were from the time he stepped on the brakes until he hit the deceased. When defendant stepped on the brakes, his car veered to the left, but continued to skid forward. De-

ceased was tossed above the car, and was thrown 44 feet from the point of impact.

Stone Avenue is a four-lane highway, and is 43 feet wide at the place where the accident happened. The intersection of Flores and Stone was unlighted, and was very dark at the time the accident occurred. It was difficult to see pedestrians and objects in the road even with headlights on. The part of Stone from which defendant was coming, as shown by the exhibits and testimony, had a number of gradual declines and rises to facilitate the flow of water across the avenue. The point of impact was in the intersection, and was at a depression on Stone. Defendant was traveling down an incline toward the intersection. Witness Riba who was driving behind defendant testified:

"Q  Do you know whether or not as you go down the hill, as you approach Flores, whether or not it decreases your headlight length?

"A  That much on a down hill grade?

"Q  Yes.

"A  Yes.

"Q  So that, based on your experience at the scene and the area around here, as you approach this area into this general area just north of Flores that your headlights, as far as seen, the intersection, would be

shortened because of the downhill grade; is that right?

\*     \*     \*     \*     \*     \*

"THE WITNESS: Yes. It would be, it would, compared to if it was straight and level, a flat highway. Going downhill you would not be able to see good.

\*     \*     \*     \*     \*     \*

"Q  One last question, Wesley. Based on your experience at the scene and being right behind Mr. Phillips, the lighting conditions, the nature of the roadway, that is, the roadway above Flores, all those factors, could you tell we whether or not it would be difficult at that time to see a pedestrian in the area as you approached Flores, in the area where Mr. Pacheco was standing when you saw him?

"A  Would say it would be hard to see?

"Q  Yes.

"A  I would say yes. It's very difficult."

Witness James P. Shoumaker testified:

"Q  Were you aware of Mr. Phillips' lights shining on you?

"A  No, sir.

"Q  Were you alert to the approach of lights?

"A  I was alert to one thing. I was alert when I heard that impact

enough to turn around and see what happened to Eddie.

"Q I asked you if—

"A If lights had reflected on me I probably would have seen him, yes."

Then, again, Shoumaker testified:

"THE COURT: The last question is, were you aware of any headlights while you were on the street?

"THE WITNESS: I said no, sir."

Appellant asserts that the evidence is such that a jury could have found that defendant violated standards of care provided for in three statutes regulating the operation of motor vehicles, and therefore a jury question was presented as to the issues of negligence and proximate cause. The statutes provide:

A.R.S. § 28–701—

"A. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

A.R.S. § 28–701—

"E. The driver of every vehicle shall, consistent with the requirements of subsection A, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, *and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.*" [Emphasis supplied.]

A.R.S. § 28–942—

"When a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in § 28–922, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, * * *."

We have recently held that under A.R.S. § 28–701, subsec. A and § 28–701, subsec. E driving at a speed less than the speed limit may be negligence. Deering v. Carter, 92 Ariz. 329, 376 P.2d 857; and Reichardt v. Albert, 89 Ariz. 322, 361 P.2d 934.

In Deering v. Carter, supra, in noting that a violation of these particular statutes is not technically "negligence per se," we said:

"When, as here, the statute does not proscribe certain or specific acts, but defines a standard of conduct against which the jury must measure the party's conduct, a finding that the party violated the statutory standard is a finding that the party was *negligent*. The words 'per se' add nothing to the word negligent in this case, and are better reserved to describe those instances where certain acts or omissions constitute negligence without further inquiry into the circumstances or reasonableness of their occurrence." 92 Ariz. at 333, 376 P.2d at 860.

In earlier cases, we held that it was negligence as a matter of law to drive a vehicle at such a speed that it could not be stopped within the range of its headlights. See e.g. Dennis v. Stukey, 37 Ariz. 299, 294 P. 276; Coe v. Hough, 42 Ariz. 293, 25 P.2d 547; Campbell v. English, 56 Ariz. 549, 110 P.2d 219; Doty v. Southern Pac. Co., 59 Ariz. 449, 129 P.2d 991. In Alabam Freight Lines v. Phoenix Bakery, Inc., 64 Ariz. 101, 166 P.2d 816, explained in Butane Corp. v. Kirby, 66 Ariz. 272, 187 P.2d 325, we rejected the "range of vision" rule and Dennis, Coe, and Campbell, which had applied it. In Butane Corp., supra, we said:

"We now hold that the driver of an automobile at night is not required *under all circumstances* to see any object in the road in front of him which comes within the radius of his lights and be able under *all* circumstances to stop his car before striking the object. The driver of an automobile at night is guilty of negligence if he collides with an object which he has *failed to see and which an ordinarily prudent driver under like circumstances* would have seen." [Emphasis supplied.] 66 Ariz. at 285, 187 P.2d at 334.

In Anderson v. Morgan, 73 Ariz. 344, 241 P.2d 786, a case in which a violation of the prohibition against driving while intoxicated was involved, we said:

"As above stated an examination of the books will show that the great weight of authority in the United States is to the effect that the violation of a statute in the operation of an automobile constitutes negligence per se * * * We therefore expressly repudiate the rule to the contrary as laid down in McIver v. Allen [33 Ariz. 28, 262 P. 5], Alabam Freight Lines v. Phoenix Bakery and Butane Corp. v. Kirby, supra, * * *" 73 Ariz. at 347, 241 P.2d at 788.

However, in Michie v. Calhoun, 85 Ariz. 270, 336 P.2d 370, we quoted with approval from Alabam Freight Lines, and said:

"Our rejection of the [range of vision] rule was made explicit in Butane Corporation v. Kirby * * * We take this occasion again to affirm our adherence to the rule that each case requires its own answer in terms of what 'an ordinary prudent person' would have done in the circumstances presented." 85 Ariz. at 273, 336 P.2d at 372.

We are of the opinion that the requirements of A.R.S. § 28–942 define a standard of care that can be determined only by reference to surrounding circumstances, and reaffirm Alabam Freight Lines, Butane Corp., and Michie, supra. Our conclusion is in accord with the better reasoned view. See e.g. 2 Harper and James, The Law of Torts, Sec. 17.2 esp. pp. 974–975.[1]

We have held that under subsection E of § 28–701 A.R.S. a driver is required to reduce his speed upon approaching an intersection when there are actual or potential hazards. However, the standards of care provided for in both subsection A and subsection E depend upon what an 'ordinary prudent person' would have done in the circumstances presented. Wolfe v. Ornelas, 84 Ariz. 115, 324 P.2d 999.

In Reichardt, supra, we approved an instruction which stated that the laws of this state

"'* * * provide that no person shall drive a vehicle on the highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any vehicle on the highway in compliance with legal requirements and the duty of all persons to use due care.

"'The driver of every vehicle shall, consistent with the requirements set forth above, drive at an appropriate reduced speed when special hazards exist with respect to other traffic.'" 89 Ariz. at 324, 361 P.2d at 936.

So, applying the standards of care which we have approved, in the instant case then the duty of defendant was to drive as would a prudent person taking into account his speed, the lighting conditions, the terrain, the actual or potential hazard, and the range of his headlights.

Taking the evidence and the inferences that may be drawn in the most favorable light for the plaintiff, the defendant was driving at a speed of 30 miles per hour in a zone with a speed limit of 30 miles per hour. A witness following the defendant testified that he drove at a constant speed, and therefore the jury would have been

---

1. We note with loss the death of Fowler V. Harper on January 8 of this year. His scholarship has been recognized by many courts and jurists.

justified in believing he did not slow down at the intersection of Stone and Flores. The jury, therefore, could have found that there was a special hazard, both from the testimony and the exhibits, that the intersection was very dark, and there was a dip or incline which threw the lights of the automobile down and prevented defendant from seeing objects at the point of impact in the intersection of Stone and Flores.

Applying the test of what was reasonable and prudent under the conditions, having regard for the actual and potential hazards then existing, the claimed acts of negligence as set forth all presented questions of fact for the jury. The jury could have found that defendant should have, because of actual or potential hazards, reduced his speed at the intersection, and that it was his duty under the facts to adjust his speed to the range of his headlights, and had he done so he would have seen the deceased in time to stop his car before hitting the deceased. Therefore the jury could have found that his failure to slow down and his failure to adjust speed to the range of his lights were the proximate cause of the accident.

Case reversed, and remanded for new trial.

STRUCKMEYER, V. C. J., and BERNSTEIN, J., concur.