415 P.2d 114

James L. MORRIS and Catherine W. Morris, husband and wife, James Fred Morris, a minor by his next friend and father, James L. Morris, Appellants,

v.

Robert M. ORTIZ and School District No. I of Pima County, Arizona, Appellees.

No. 2 CA–CIV 171.

Court of Appeals of Arizona.

June 14, 1966.

Rehearing Denied Aug. 8, 1966.

Review Granted Sept. 27, 1966.

Holesapple, Conner, Jones, McFall & Johnson, by G. Marshall Jones, Tucson, for appellants.

Mays, Dees & Newell, by Paul F. Newell, Tucson, for appellee Ortiz.

Chandler, Tullar, Udall & Richmond, by Thomas Chandler, Tucson, for appellee School Dist. No. 1.

HATHAWAY, Judge.

Appellants, plaintiffs below, appeal from a judgment entered in superior court, Pima County in favor of the appellees, defendants below, and from the order denying their motion for a new trial. The plaintiffs filed suit against the defendants to recover damages for personal injuries sustained by James Fred Morris and for medical expenses incurred by his parents, James L. and Catherine W. Morris as the result of an accident on the premises of Tucson High School, Tucson, Arizona.

At the time of the incident which gave rise to this lawsuit, James Fred Morris was a student enrolled in an auto mechanics course taught by defendant Ortiz, an employee of the defendant School District. The complaint alleged that the severe injury to James' left hand was caused by Mr. Ortiz' negligence and the case was tried to the jury on this theory. At the close of the plaintiffs' case, the defendants moved for a directed verdict which was granted for the reason that "the plaintiffs' evidence was not sufficient to make a case of actionable negligence on the part of the defendants which proximately caused damage to the plaintiffs." The sole question raised by this appeal is the propriety of the trial court's direction of a verdict.

█ Plaintiffs contend that the court erred in taking the case from the jury as there was evidence from which reasonable men could have concluded that defendant Ortiz (1) failed to exercise the degree of care owed to a student by a teacher and (2) that such breach of duty was the proximate cause of the student's injury. We agree that if there was any evidence of negligent conduct on the part of the defendants which

reasonable men might infer was one of the proximate causes of the accident involved here, the case should have been submitted to the jury. Finn v. J. H. Rose Truck Lines, 1 Ariz.App. 27, 32, 398 P.2d 935 (1965).

Viewing the evidence in a light most favorable to the plaintiffs, the following facts are disclosed. On the day of the accident in December 1960, 18 year old James Fred Morris was attending an auto mechanics class at Tucson High, the class enrollment totalling about 18 students. The class was an advanced one designed to prepare students for a vocation in auto mechanics. Defendant Ortiz, a qualified instructor with 13 years' teaching experience in auto mechanics, was in charge of the class and was present in the workshop when the accident occurred. A group of four or five boys, including James, were working on a project of converting a 1947 automobile into a demonstration model for school use. This required removing certain portions of the vehicle. Prior to the accident, the boys had severed the top of the car and had lifted it off the car frame and placed it on the workshop floor near the car so that the top was resting on the metal edges which had been cut at the corner posts. The metal edges so exposed were sharp and jagged.

Although it was unnecessary to alter the shape or size of the car top for purposes of transferring it to the outdoor scrap heap, the boys decided to try to bend the top by jumping on it. Mr. Ortiz, on cross-examination, testified:

"Q. Did you hear or come back to them before the injury occurred?

"A. Yes.

"Q. What called your attention to coming back to them?

"A. When the top was removed the boys dropped it on the floor and this was loud enough for me to hear anywhere in the shop, so I rushed down there. I went down there and checked. When I got there the boys were jumping on top of the top. The top was on the floor, flat,

with the curvature up. You understand what I mean. They were jumping on top of it trying to flatten it down, and I said, 'It is too bad, but it can't be bent. Take it out and dump it out in the area in the back,' some of these words. That was it. When I told them this I moved over to the area where the man was working on the distributor machine and I went over to instruct him and check his work, which was not more than ten feet at the furtherest away.

"Q. Now the boys were jumping on it then, is that your testimony?

"A. When I got there they had been jumping on it. When I got there they weren't because I didn't see any benefit to them jumping on that top.

"Q. But you knew they had been jumping on it?

"A. The way it was bent obviously they had been jumping on it."

James Morris testified that he had no recollection of being directed by Mr. Ortiz to carry the top outside. Another member of the group testified that he heard someone say "it would be nice if it was bent" and he thought it was Mr. Ortiz. Another boy on deposition stated:

"Well, we took the top off and placed it on the floor and Mr. Ortiz was there and there was a discussion on where we should put it, and he wanted it outside in a certain little area he had for scrap metal, and there was a remark made by Mr. Ortiz that it was too bad it couldn't be folded, or something to that effect, so we got the idea of trying to bend the top."

A fourth boy who had been working on the demonstration model testified on deposition:

"He left no instructions as to the bending of the top, as it would not be necessary to bend it to take it out of the door. He just merely told us we should take it outside and deposit it, where it would be hauled away."

The boys' testimony also reveals that no one was appointed by the teacher to act as group leader. This is corroborated by the fact that there was no uniform plan with regard to the removal of the car top to the scrap heap. In fact, the whole operation seemed to be a medley of individual ideas and efforts rather than a team endeavor.

Mr. Ortiz had been circulating around the workshop, generally overseeing and inspecting work in progress, at the time the boys were removing the top from the car. After he realized the boys had been jumping on the car top, he remained in the vicinity of the group at about a distance of approximately five to ten feet. James and another boy lifted one end of the car top off the floor and as they were lowering it to the floor, two other members of the project group, without prior warning, jumped from the car onto the top. James testified that he didn't see the boys who jumped until they landed on the top. The boy who was holding the other side released his grip when he saw the boys in the air, thus escaping injury. James' left hand was cut by the metal edge of the top as it slid over his fingers from the weight of the boys who had jumped.

Absent a special relationship, a person has no duty to control the conduct of a third person so as to prevent him from causing physical harm to another. Restatement (Second), Torts § 315. A pupil-teacher relationship, however, imposes upon the teacher a duty to control the conduct of the pupils in his class to prevent them from harming another pupil. See Restatement (Second), Torts § 320 and comment (a). The parties are agreed that the applicable standard of care is that of a reasonable, prudent schoolteacher under the circumstances. Plaintiffs contend that the following "circumstances" would justify a conclusion that Mr. Ortiz' conduct fell below the required standard of care:

(1) Difference in age and experience between the teacher and his pupils.

(2) The pupils' lack of prior experience in this particular phase of auto mechanics, i. e., cutting up a car.

(3) The importance of safety measures in shop practice and the possibility of pupils engaging in unsafe practices unless unequivocally instructed regarding same.

(4) The importance of appointing a group leader to coordinate the various phases of the dismantling operation.

(5) Mr. Ortiz' knowledge that the boys had been jumping on the top and his awareness of the sharp-edged condition of the top.

We recognize the physical impossibility of a teacher supervising every minute detail of every project and activity in progress during class session, but we believe that reasonable men might find that a teacher in charge of an auto mechanics class would have given more personal supervision to this somewhat dangerous operation, or would have appointed a group leader to coordinate the activities conducted, or both. The very nature of the work required team effort and a synchronization of the various steps necessary to accomplish removal of the car top, and the accident that occurred could very well be found to be the result of lack of coordination.[1] There being no one in charge of the group to see to it that this was accomplished, the jury might have concluded that the teacher was derelict in his duty in failing to appoint a leader and/or in not having unequivocally instructed the boys to "cease and desist" from any further attempts to bend the car top.

■ Since reasonable minds might differ as to whether the teacher, charged with the duty of supervising the conduct of his pupils, used the same care as a reasonable prudent schoolteacher would use under the same circumstances, resolution of this question of fact was for the jury under proper instructions. See Dutcher v. City of Santa Rosa High School District, 156 Cal.App.2d 256, 319 P.2d 14, 17 (1957); Lilienthal v. San Leandro Unified School District, 139 Cal.App.2d 453, 293 P.2d 889, 891 (1956); Morris v. Douglas County School District, 403 P.2d 775, 776 (Or.1965).[2]

■ It is possible that the trial court, in directing a verdict, concluded as a matter of law that the injuries herein involved were proximately caused by the independent, intervening act of the students rather than by any negligent conduct on the part of the teacher, thereby relieving the defendants of liability. Such a conclusion would be erroneous. If the harmful consequences were brought about by intervening and independent forces, the operation of which *might have been reasonably* foreseen, there was no break in the chain of causation of such character as to relieve the defendants from liability. Salinas v. Kahn, 2 Ariz.App. 181, 407 P.2d 120, 129 (1965); MacNeil v. Perkins, 84 Ariz. 74, 83, 324 P.2d 211 (1958); Salt River Valley Water Users' Ass'n v. Cornum, 49 Ariz. 1, 13, 63 P.2d 639 (1937); Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 389, 120 P.2d 417 (1941).

■ The reasonable foreseeability of a "repeat" jumping performance was a question for the jury's determination as there was room for a reasonable difference of opinion as to the foreseeability of such conduct. Restatement (Second), Torts § 453, comment (b). For the reasons stated, the judgment is reversed and the case remanded for a new trial.

KRUCKER, C. J., and MOLLOY, J., concur.

---

1. Some students were under the impression that they were supposed to be transporting the car top to the scrap heap while others had the impression that they were to continue the "bending" attempts by jumping on the car top.

2. For a comprehensive collection of cases dealing with the duty of schools to provide reasonable supervision, see Annotation, 86 A.L.R.2d 489, 554 (1962).