437 P.2d 652

James L. MORRIS and Catherine W. Morris, husband and wife, James Fred Morris, a minor by his next friend and father, James L. Morris, Appellants,

v.

Robert M. ORTIZ and School District No. I of Pima County, Arizona, Appellees.

No. 8832–PR.

Supreme Court of Arizona,
In Banc.

Feb. 16, 1968.

Rehearing Denied March 12, 1968.

**120**

Holesapple, Conner, Jones, McFall & Johnson, Tucson, for appellants.

May, Dees & Newell, Tucson, for appellee Ortiz.

Chandler, Tullar, Udall & Richmond, Tucson, for appellee School District No. 1.

STRUCKMEYER, Justice.

Appellants James L. Morris and Catherine W. Morris, his wife, brought this action on behalf of their minor son, James Fred Morris, for personal injuries suffered while he was attending an auto mechanics class at the Tucson High School under supervision of Robert M. Ortiz, appellee herein. After trial the court directed the jury to return a verdict in favor of appellees and against appellants, and judgment was entered in conformity with the verdict. From that judgment and from the order denying appellants' motion for a new trial, this appeal has been perfected. Opinion of the Court of Appeals, 3 Ariz. App. 399, 415 P.2d 114, vacated.

■ It is, of course, well settled in this jurisdiction that on a motion for a directed verdict the defendant admits the truth of whatever competent evidence the plaintiff has introduced and all reasonable inferences that can be drawn therefrom. See, e. g., Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803. We, therefore, take as literal the testimony of appellant James Fred Morris and examine it to determine whether any negligence is shown or can possibly be reasonably inferred, bearing in mind that appellants urge that Ortiz was negligent in failing to supervise properly the activities of other students at the time of the injuries to James Fred Morris (hereafter called Morris).

Morris testified that Ortiz wanted the class to dismantle an automobile and prepare a cut-a-way view of it. The class of twenty-two students was divided into groups of four and five and Morris' group cut off the top which was placed on the floor. An attempt was made to bend the top in the middle, preparatory to taking it outside and placing it on a scrap pile. Several attempts were made to bend the top by jumping on it without success.

Appellee Ortiz testified that at this point he came over and said, "It's too bad, but it can't be bent. Take it out and dump it out in the area in the back." Seemingly, it was then decided by this group of students that they would make another effort to bend the top for, as Morris testified:

"It was decided that one boy was going to stand on the top in the middle and we were going to try to lift it up to try to bend it over."

Then,

"And we lifted it up and it didn't do anything, and another boy, I believe jumped off the back bumper onto the top.

\* \* \* \* \* \*

"\* \* \* and it cut my hand."

Morris further testified in this fashion:

"Q \* \* \* you were trying to lift it up?

"A Yes.

"Q And bend it?

"A Yes.

"Q And then someone apparently jumped off the car onto the top?

"A Yes.

"Q And who was that boy?

"A Bill Gillmor.

"Q How did you learn that he had done that?

"A Well, as he did it I saw him do it.

\* \* \* \* \* \*

"Q He was actually in the air when you saw him?

"A Well, he actually hit it. I mean, when he started to go down I looked up.

"Q If you had had any idea that he intended to jump on it you would not have held the car top in the way you held it?

"A Correct.

\* \* \* \* \* \*

"Q And you just didn't have time enough to let go?

"A No.

\* \* \* \* \* \*

"Q You realized, didn't you, that it would be dangerous if the boy on top had jumped or somebody had jumped on the top while you were holding that jagged edge?

"A I realize it would have been, but at the time nobody had planned to jump.

"Q What plan did you have?

"A It was merely for the boy to stand on it and us to try to lift up the other end to bend the middle using him as a weight."

Ortiz was close by in the same general area instructing another or other students concerning the operation of some machinery. Although there is a suggestion that Ortiz was watching, or was in a position to see, it is uncontradicted that he, like Morris, was unaware that Gillmor intended to jump. Consequently, the only inference is that Gillmor's act was wholly unexpected.

 Negligence is, of course, the failure to act as a reasonable and prudent person would act in like circumstances. Alires v. Southern Pacific Co., 93 Ariz. 97, 378 P.2d 913. The test of negligent conduct is what a reasonable prudent person would or would not do under the circumstances, Mills v. Charles Roberts Air Conditioning Appliances, 93 Ariz. 176, 379 P.2d 455, and the principle is too well established for quibbling "that before liability may be imposed for an act [or the failure to act], the prevision of a reasonable person must be able to recognize danger of harm to the plaintiff or one in plaintiff's situation." Tucker v. Collar, 79 Ariz. 141, 146, 285 P.2d 178, 181. Appellants do not point out precisely what specific act of

negligence arising out of the general charge of failure to supervise which they rely upon. Assuming that Ortiz was watching when Morris lifted the automobile top in an effort to "bend it", we are still at a loss here, in such a simple fact situation, to imagine how the prevision of this school teacher, as a reasonable man, could have been such as to recognize the danger of harm.

 To put it another way, to constitute actionable negligence the defendant must owe a duty to the plaintiff, the breach of which results proximately in plaintiff's injury. Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352. So, the question which must be answered is, "What duty did Ortiz owe as the supervising instructor, the breach of which resulted in Morris' injury?" To hold that Ortiz had to anticipate Gillmor's act and somehow circumvent it is to say that it is the responsibility of a school teacher to anticipate the myriad of unexpected acts which occur daily in and about schools and school premises, the penalty for failure of which would be financial responsibility in negligence. We do not think that either the teacher or the district should be subject to such harassment nor is there an invocable legal doctrine or principle which can lead to such an absurd result.

Appellant suggests that Ortiz was derelict in failing to appoint a group leader. There is no evidence that it is necessary or even desirable to appoint group leaders in shop classes such as this. Irrespective, it is but the sheerest speculation to urge that the appointment of a group leader would have led to the anticipation of Gillmor's unexpected act or could have possibly circumvented it. Such gossamer speculation is the stuff from which dreams are made and not the foundation stone for an action in negligence. Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253.

There are numerous authorities which set forth the rule appropriate to this type of situation. In Luna v. Needles Elementary School Dist., 154 Cal.App.2d 803, 316

P.2d 773; 86 A.L.R.2d 489, 550n., a child lost a finger because it was caught in the school gate. The complaint alleged that the defendant district and its employees were negligent in conducting and supervising the school. The plaintiff's teacher was in the school house and no teacher was present in the school yard. The Court said:

"The standard of care required of any officer or employee of such a school is that which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances. [Citation.] * * * There is no evidence that would justify the inference that this teacher should reasonably have expected not only that this boy would climb this wall but that his hand would slip at the very moment another boy was moving the gate. [Citation.] It was encumbent upon the appellants to produce evidence showing some defective condition in this gate, or evidence on the matter of supervision which would justify an inference that there was a failure in that respect. * * * Under the circumstances shown by the record the motion for nonsuit was properly granted." 316 P.2d at 775, 776.

In Wright by Murphy v. City of San Bernardino High School Dist., 121 Cal.App. 2d 342, 263 P.2d 25; 86 A.L.R.2d 489, 555n., the eye of a 16-year old high school junior was severely damaged when he ran into the line of flight of a tennis ball which had been thrown and which was to have been hit with a tennis racket by another class member. Defendant's motion for judgment of non-suit was granted and the plaintiff appealed, contending "that the evidence was sufficient to require that the issues of negligence and proximate cause be submitted to the jury; that the respondent was under a duty to supervise the boys of this class * * *." The Court said, in affirming the lower court's judgment:

"The element of danger arose only from the fact that Wright wore rimless glasses, and because of his sudden action in running into another field of play of which he was aware. It cannot reasonably be inferred that this act was one which should have been anticipated in advance. And the time between Wright's sudden act and the injury was so short that the teacher, if present, would have had no opportunity to recognize a new hazard in time to have taken any action to prevent the injury. If it be assumed that any negligence appears, the evidence would not support the conclusion that it was the proximate cause of the injury." 263 P.2d at p. 28.

In reversing a judgment in favor of a plaintiff against the Board of Education of the City of New York, Conway v. Board of Education of City of New York, 11 Misc.2d 162, 171 N.Y.S.2d 533, under the factual situation that the plaintiff had her fingers caught in a door jamb and was thrown back by several unruly and scuffling children just as the door of the class room was being closed, the Court said:

"True, negligence is a breach of duty and is 'relative to time, place and circumstance' (Caldwell v. Village of Island Park, 304 N.Y. 268, 107 N.E.2d 441, 443). Yet the neglect here claimed to constitute a breach of the duty of adequate general supervision, related to the time, place and circumstance disclosed by the evidence, do not spell out a foreseeable danger when considered in the light of established authority that *all* movement of pupils need not be under *constant* scrutiny (Wilber v. City of Binghamton, 271 App.Div. 402, 403, 66 N.Y.S.2d 250, 251, affirmed 296 N.Y. 950, 73 N.E.2d 263)." 171 N.Y.S.2d at 535. (Emphasis in original.)

In Hack v. Sacramento City Junior College Dist., 131 Cal.App. 487, 21 P.2d 477; 9 A.L.R.2d 234n, the California appellate court reversed a judgment against the School District. It appears that at an art class the plaintiff went to get some paint as directed by the teacher. As she was passing by certain flats being held by two students, the flats became so heavy that one of the students stepped aside and al-

lowed them to fall, knocking the plaintiff down and injuring her. The Court said:

> "The fact that the students were attempting to carry out certain requests made by their instructor, Mr. Halstead, does not change the rule. In conducting class work a teacher must frequently give directions. While carrying out such directions, the students may, in many ways, act without due care. But for their negligence in such matters the statutes have not gone to the extent of imposing a liability on the school district.

> "From what has been said we think it clearly appears that no act of negligence was alleged, proved, or found against an officer or employee of the defendant. The utmost that can be claimed is that negligence was committed by the students Hunt and Thorne, who are not parties to the action." 21 P.2d at 479.

See also Kos v. Catholic Bishop of Chicago, 317 Ill.App. 248, 45 N.E.2d 1006; Wilber v. City of Binghamton, 271 App.Div. 402, 66 N.Y.S.2d 250 affirmed 296 N.Y. 950, 73 N.E.2d 263, Pollard v. Board of Education, Barker Central School Dist., 280 App.Div. 1033, 117 N.Y.S.2d 184.

The opinion of the Court of Appeals is vacated and the judgment of the Superior Court of Pima County is affirmed.

McFARLAND, C. J., BERNSTEIN, J., and FRANK X. GORDON, Jr., Judge, Superior Court, concur.

NOTE: Vice Chief Justice JESSE A. UDALL having disqualified himself, Judge FRANK X. GORDON, Jr., served in his stead.

LOCKWOOD, Justice (dissenting):

I cannot agree with the decision of the majority of the Court. I believe the decision of the Court of Appeals, Division Two, was correct in holding that reasonable minds could differ as to the inferences to be drawn from the evidence as to whether defendant Ortiz was negligent.

On appeal by the plaintiff from a verdict directed for the defendant, the appellate court must view the evidence in a light most favorable to the party against whom the verdict is directed. LeRoy v. Phillips, 97 Ariz. 263, 399 P.2d 669 (1965); Robledo v. Kopp, 99 Ariz. 367, 409 P.2d 288 (1965). It is also well established that a verdict will not be directed in a case where the evidence is conflicting or where on all the facts and circumstances there is room for fair and sensible men to differ in their conclusions. Campbell v. Brinson, 89 Ariz. 197, 360 P.2d 211 (1961). Viewing the evidence in a light most favorable to the plaintiffs, I am satisfied that reasonable minds could reach different conclusions on the inferences to be drawn from the evidence. Whether Ortiz gave an order just prior to the accident which was (a) definite and explicit, and which called for but one response from the plaintiff and the other boys working on the top; or was (b) couched in equivocal terms susceptible of more than one response by the plaintiff and the others; or was (c) inaudible to those to whom it was directed, are questions which may prove crucial in the minds of the jurors on the issue of the standard of care required of Ortiz under the circumstances. The transcript clearly discloses a conflict on this aspect of the testimony in the case. Moreover, the triers of fact might affix liability notwithstanding their finding on the aforementioned question if, in their minds, they would find the circumstances and conditions existing at the time of the accident of a gravity which would require Ortiz to stand by to be certain that the plaintiff and the others executed the order and ceased from further attempts to bend the top. I believe the evidence was sufficient for the jury to consider whether there was danger present which could have been foreseen by the defendant Ortiz.

Courts have for many years grappled with the problem of establishing a fair and reasonable standard for determining the extent of responsibility of teachers in the public schools when students under their supervision have sustained injuries arising

from the alleged negligence of the teachers. Mindful of the vital function teachers serve in the education and molding of youth, courts have been reluctant to hold teachers liable in the fear that this function might be substantially impaired. Yet there are conflicting interests involved in such cases where negligent injury is alleged. As was succinctly noted by Judge Conway in his dissent in Ohman v. Board of Education, 300 N.Y. 306, 90 N.E.2d 474 (1949): "Parents do not send their children to school to be returned to them maimed because of the absence of proper supervision or the abandonment of supervision". 300 N.Y. at 311, 90 N.E.2d at 476 (1949).

Today in a majority of our sister states, teachers committing negligent torts rest under the protective aegis of governmental immunity. In Arizona, however, the theory of governmental immunity has been abandoned. Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963). The problem here, therefore, exists within the framework of the student-teacher relationship, embracing the statutory right vested in a school district and its teachers to control the conduct of students required by law to attend school, and the correlative duty to protect students from hazards and dangers reasonably to be anticipated and foreseen.

An examination of the cases and commentaries discloses that three basic duties arise from the teacher-student relationship: (1) the duty to supervise; (2) the duty to exercise good judgment; and (3) the duty to instruct as to correct procedures, particularly (but not exclusively) when potentially hazardous conditions or instrumentalities are present. These basic duties must coexist with the whole purpose for the teacher-student relationship, viz. education.

In the recent case of Eastman v. Williams, 124 Vt. 445, 207 A.2d 146 (1965), the Supreme Court of Vermont held that breach of a teacher's affirmative duty of supervision would constitute actionable nonfeasance. A child had been injured by a defect in a piece of playground equipment, a defect of which the teacher supervising play had knowledge. A verdict had been directed for the defendant teacher. The Court stated that sufficient evidence had been adduced to permit a jury's consideration of whether a reasonable, prudent person would have thought that injury might be likely to occur if warning were not given or use of the defective equipment not prohibited.

The case of Mastrangelo v. West Side Union High School District, 2 Cal.2d 540, 42 P.2d 634 (1935), involved the duty to supervise and to instruct. There the plaintiff-student was injured by an explosion caused by his selecting a wrong ingredient and mixing the ingredients improperly in the chemistry laboratory. The plaintiff testified that the defendant teacher was in the class, had walked behind the plaintiff during the mixing, but had given no order or instruction at that time. Shortly before the explosion, the teacher was approximately fifteen feet from the accident. The Court stated:

"From the foregoing evidence a reasonable inference may be drawn that the chemistry instructor [defendant] saw the grinding of the ingredients * * *, yet he failed to warn the boys against the danger of that method of mixing them." 2 Cal.2d at 547, 42 P.2d at 637 (1935).

The relationship of a public school teacher to his pupil is in some respects in loco parentis. Having the right to control and supervise the pupil, there is a correlative duty to act as a reasonable and prudent parent would in like circumstances. Proehl, Liability of Teachers, 12 Vand.L.Rev. 723, 740 (1959). The rationale of in loco parentis does not however apply in determining liability for a negligent tort against the pupil. In most jurisdictions the parent is not liable for negligent tort against his child, but the public school teacher may be.

The problem lies in determining what criteria should be used to meet the standard of care necessary to be exercised by the public school teacher. If the probability of harm can be foreseen, the public school teacher should take such measures as are

reasonable and prudent to prevent an injury to the student. As the gravity of the possible harm increases due to conditions or circumstances to which the student is subjected, the apparent likelihood of its occurrence need be correspondingly less. No one can deny that few sectors of public and private existence are safe from risks to life and limb; the schoolyard, the classroom, the shop class, the chemistry laboratory certainly have their dangers and their risks. Teachers presumptively endowed with superior skill, judgment, intelligence and foresight, must fulfill the strong duties arising from their public position by exercising care commensurate with the immaturity of their charges and the importance of their trust. Satriano v. Sleight, 54 Cal.App.2d 278, 129 P.2d 35 (1942).

"The characteristics of children are proper matters for consideration in determining what is ordinary care with respect to them, and there may be a duty to take precautions with respect to those of tender years which would not be necessary in the case of adults." Shannon v. Butler Homes, Inc., 102 Ariz. 312, 317, 428 P.2d 990, 995 (1967).

However, age of the injured plaintiff is not the controlling element to tip the balance between liability and non-liability.

"The boy in this case was nearly eighteen, but we should not close our eyes to the fact that even boys of seventeen and eighteen years of age, particularly in groups where the herd instinct and competitive spirit tend naturally to relax vigilance, are not accustomed to exercise the same amount of care for their own safety as persons of more mature years." Satriano v. Sleight, 54 Cal.App.2d 278, 283, 129 P.2d 35, 38 (1942).

The evidence here discloses that the boys were attempting to bend the auto top by jumping on it, that Ortiz had observed this, and had remarked, "It's too bad, but it can't be bent. Take it out and dump it in the area at the back." Then, knowing the boys had been jumping on it, and presumably knowing the nature of teenage boys to continue to try to achieve an objective without exercising adult judgment, Ortiz walked away without waiting to see that the boys had stopped jumping on a metallic frame which might be dangerous to one holding onto it.

The question to be determined by the trier of fact was: Did the teacher do such acts or omit to take such precautions that under the circumstances he, as an ordinarily prudent person, ought reasonably to have foreseen that to do otherwise would thereby expose the interest of a student to an unreasonable risk of harm. Further, it is not a requirement that the teacher foresee the exact injury that would take place once the risk or danger is foreseen, or could reasonably be foreseen by an ordinarily prudent person under the circumstances; what has to be shown is a causal relationship between the alleged breach of duty and the resulting injury. I believe there was sufficient evidence that should have required submitting the case to the jury to determine whether Ortiz was negligent in shop supervision under the existing circumstances.