**ELIA MOTU for himself and on behalf of WAYNE MOTU, a minor, Plaintiffs**

**v.**

**AMERICAN SAMOA GOVERNMENT and PISA TIVAO, Defendants**

High Court of American Samoa
Trial Division

CA No. 38-91

April 25, 1995

Before KRUSE, Chief Justice, and TAUANU`U, Chief Associate Judge.

Counsel:     For Plaintiffs, Togiola T.A. Tulafono
               For Defendants, Henry W. Kappel, Assistant Attorney General

Decision and Order:

Plaintiff Wayne Motu is today a 14 year old freshmen of Leone High School. Six years earlier, while he was a student at Midkiff Elementary

3

School, Wayne fractured his elbow after a number of his fellow students fell on him in the playground during a physical education ("PE") period. Wayne claimed, and testified accordingly, that he had heard his teacher, defendant Pisa Tivao ("Tivao"), shout out to a group of his fellow students to tackle and have a pileup on him as he was not participating in PE; that his classmates did so while he was sitting on the cement cricket pitch in the middle of the playing field--the cricket pitch for the local version of this game is typically a cement slab in the middle of a field. Wayne further testified that Tivao was standing next to one of the nearby school buildings, off the playground, when he called out the pile-upon-him instruction.

Tivao on the other hand flatly denied giving such an instruction, claiming that he was not even aware that Wayne was on the playing field, since he had previously excused Wayne from PE when the latter had earlier claimed illness. Tivao further testified that when Wayne sought to be excused, he instructed him to join another teacher, Ms. Pua Te`o, and her group (of those in the class athletically less inclined) who were gathered near one of the school buildings. Tivao also testified that he was actually on one extreme of the playground supervising the boys of the class in their football game, while yet another fellow teacher, Anette Solomona, supervised the girls on the other extreme of the field. He first learned of Wayne on the playground, when two students came to tell him that Wayne was hurt.

Mr. Tivao's testimony was corroborated by Ms. Te`o, who has since retired from teaching. She recalled the day of the injury and testified to overhearing Tivao's instructions to Wayne to join her group, who engaged in a "telling message" game. She further testified that for a while Wayne was with her, but she did not notice when he left, nor when he was injured.

Three of Wayne's classmates also confirmed Tivao's version of the facts. They each testified that they were part of a group that was congregating in mid-field when Wayne joined them, and that they had fallen on Wayne when a group of eighth graders, who were also playing on the field, ran into them. Contrary to Wayne's testimony, they placed Tivao on the playground when the accident occurred; two of the group ran across the field to Tivao to alert him of Wayne's injury.

## DISCUSSION

On the evidence, we find Tivao's version of the facts to be more credible.

4

Despite corroboration, even by Wayne's own peers, Wayne's singularly maintained version of the facts bears some signs of early coaching at an impressionable age. First, Wayne's contradicted testimony about Tivao's location when he was said to have called out the pile-upon-him instruction is simply not believable. After viewing the site of the accident, taking into account the distance between the school buildings situated across the road from the playing field and the cricket pitch in mid-field, together with the level of noise that would have been generated by several groups of youngsters on the playground, we find it highly unlikely that Tivao could have even been audible, if he was in fact where Wayne had placed him. Second, the claimed extent of Wayne's disability as a result of his injury simply does not correspond with his fellow students' accounts of his regular display of basketball prowess at Leone High School; nor does it square with his startling in-court demonstration when he twice thumped heavily on the witness box with his affected arm, while marking out his reference to a momentary time span. Third, when two of the teaching staff took Wayne home after the accident, they were confronted by his distraught father who immediately began to talk of lawsuits at the very outset.

We find on the evidence that Tivao did not give an instruction prompting other children to pile on Wayne and, thus, find plaintiff's negligence claim in this regard to be unsubstantiated.

Alternatively, counsel submitted at final argument that the evidence was consistent with a conclusion of negligent omission on the part of Tivao in failure to adequately supervise his minor client. Counsel accordingly moved to amend the pleadings to conform to the evidence. Defendants objected to the motion arguing untimeliness and prejudice.

█ The relevant rule is T.C.R.C.P. 15(b), which provides for the amendment of pleadings to conform to the issues actually tried on the evidence. A Rule 15(b) motion can be made "at any time, even after judgment," and such requests "shall [be] freely [granted] when the presentation of the merits of the action will be subserved . . . and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." T.C.R.C.P. 15(b). Clearly, the amendment sought by plaintiff relates to matters that were within the scope of the proof, and while the defendants claim surprise and lack of opportunity to prepare to meet the unpleaded issue, we note in the context of an earlier motion by the government to dismiss, that plaintiff had in his opposition papers articulated the "basis [of his action as] the failure of the ASG employee [Pisa Tivao] to properly

5

supervise physical education period for his class, which failure resulted proximately in the injuries and damage to the minor." Plaintiff's Memorandum in Opposition to Motion for Dismissal, at page 1.[1] Under the liberal spirit of the Trial Court Rules of Civil Procedure, a negligence claim based on an allegation of an omission was, in our view, clearly noticed and, therefore, the defendants not unduly prejudiced in their defense.

■ We turn to the question of whether the evidence establishes a want in supervision on the part of Tivao, rising to the level of negligence. We think not. Tivao had, in our view, done all that he could reasonably be expected to do in the circumstances. On Wayne's request to be excused from PE on account of illness, he instructed Wayne to join Ms. Te`o's group off the playing field. After attending to Wayne's situation, he then concentrated on the remainder of the class's PE activities. If, on the other hand, Tivao was then required to keep a continuous eye on Wayne at all times to ensure that he was not hurt, then it would be nigh impossible for him, or any other teacher in his circumstances, to accomplish very much relating to the rest of the class. Consequently, "the constant and unremitting scrutiny" of students on school premises in order to prevent injury has not been expected of school officials and teachers. *Fagan v. Summers*, 498 P.2d 1227, 1228 (Wyo. 1972); *Kos v. Catholic Bishop of Chicago*, 45 N.E.2d 1006 (Ill. 1942). (Intervening action of fellow students mitigates the teacher's duty to take every possible precaution.) At the same time, we are satisfied on the evidence that the proximate cause of Wayne's injury was not the absence of supervision, but the combination of his not following Tivao's instruction to stay off the playground and his being run down on the playground by other children involved in play.

On the foregoing, we conclude in favor of the defendants and direct that judgment be entered accordingly.

It is so ordered.

---

[1] The grounds asserted by the government for its motion to dismiss was that the complaint in actuality alleged facts describing assault and battery and that notwithstanding plaintiff's labeling of his complaint as one for "negligence and damages," the government had not waived its sovereign immunity, under the Government Tort Liability Act, A.S.C.A. § 43.1201 *et seq.*, to assault and battery based claims.

Because of the case's early posture at the time of the motion, we denied the same favoring plaintiff's position that his complaint had also sufficiently noticed a claim based on inadequate supervision.