[Civ. No. 9915.   Second Appellate District, Division One.—December 11, 1935.]

IVA POORMAN YEOMAN, Respondent, v. GERTRUDE MAY SHERRY et al., Appellants.

568

Will H. Winston for Appellants.

James D. Randles and F. Ray Risdon for Respondent.

ROTH, J., *pro tem.*—·The complaint in this action charged several defendants in a number of counts with conspiracy to defraud. As a result of one trial and an order of nonsuit made in the instant proceeding, the action narrowed itself

down to those causes of action which charged appellant Gertrude May Sherry with fraud, while acting in the capacity of a real estate broker for respondent in the exchange of certain properties owned by respondent for two several deeds of trust secured by 320 acres of land located in Glenn County; and a cause of action against Great American Indemnity Company, based upon its liability upon the bond of appellant Sherry posted with the real estate commissioner, pursuant to law. Appellants deny that appellant Sherry acted as a broker for respondent in the transaction mentioned, and also deny that there was any misrepresentation in connection with said transaction.

The evidence shows that, pursuant to an advertisement inserted in a newspaper by respondent which disclosed that she had certain real property to exchange, Mrs. Sherry contacted respondent and consummated for her an exchange of certain parcels of real estate owned by respondent for an equity in a duplex situated in Long Beach. This first transaction was finished on April 28, 1931. Less than two full months thereafter, Mrs. Sherry consummated an exchange of the duplex equity acquired by respondent in the first transaction for an equity in a four-family flat, also located in Long Beach. Thereafter, on October 5th of the same year, appellant Sherry consummated an exchange of the equity acquired by respondent in transaction No. 2 for two promissory notes for $7,500 and $8,000, respectively, each secured by one deed of trust upon the acreage in Glenn County. Appellant Sherry admitted that she represented respondent as a broker in the first two transactions, but denied that she acted in that capacity in the third, out of which this action arises.

Some of the evidence in connection with this transaction is as follows:

"She (Mrs. Sherry) telephoned me to come down to her office and see the Trust Deed that she had been able to get . . . it was about the middle of September.". There was some conversation with reference to the trust deeds at that time, respondent continuing her testimony asserted that she called at Mrs. Sherry's office the second time "about the second of October, 1931", at which time the following took place: "I said, 'I don't know anything about them.' And so she said, 'Well, here is a guarantee,' . . . 'This is a guarantee for these Trust Deeds . . . This paper guarantees these deeds for $16,000.00

and if they are not good the Land County Title Company would have to pay you $16,000.00 . . . ' I said, 'Mrs. Sherry, would you take these Trust Deeds yourself?' And she said, 'I wish I had enough to get them with.' And then I said, 'But what do you really think about it, Mrs. Sherry?' She said, 'you are going to like these. Ask Mr. Sherry if he does not think they are good.' . . . I said, 'Where is this property that these Trust Deeds were on?' She said, 'Up at Willows, about 90 or 100 miles from Sacramento.' I said, 'How much is the property worth?' She said, '$30,000.00.' I said, 'What if they don't pay the interest?' . . . Yes I signed every paper that she put before me. They were already prepared and ready for me to sign. Yes, I suppose I signed the deed, and whatever belong to the others. . . . I said, 'Mrs. Sherry, my name isn't on these Trust Deeds anywhere. What if I lose them?' She said, 'You don't want to lose them. They are just as good as $15,500.00 cash to you and don't you worry until the interest is due on them.' ''

A witness, H. F. Jones, who executed the trust deeds in question, testified in effect concerning the acreage in part as follows:

'' . . . I was the owner of the property just for that. It never cost me anything, and I never paid a nickel on it at any time . . . I never paid any interest on the notes . . . I never saw the property until something like a year after when they sent me up there. I never saw it until that time.''

In view of the fact that each of the notes at the time they were transferred to respondent had endorsements on the back showing all interest paid to date, the testimony of witness Jones that he never paid any interest is of significant importance.

As to the value of the acreage, an expert testified in substance as follows:

''I live at Willows, Glenn County, and have lived there for 52 years . . . I am a farmer and have farmed for something like 40 years, and I am familiar with real estate values in and around Willows. I know the value of the land in question. . . . As to the reasonable market value of it, in my opinion $5.00 an acre would be a big price for it . . . Yes, that would be a peak price.''

The papers ''she put before me'', signed by respondent and referred to in the foregoing excerpts from respondent's testimony, were as follows:

"Loans Hotels Apartments Appraisals.

"G. M. Sherry Licensed and Bonded Broker Telephone 667–98 Long Beach, Calif. 132 W. Ocean Blvd., October 5, 1931.

"For equity in 4-flat; Lot 6 Block 7 Willow Jct. Tract, Long Beach, California I hereby accept deal from Walter Gates, of two Trust Deeds, namely 1st. Trust Deed for sum of $7,500.00 from H. F. Jones to John W. Forsyth dated April 11–1930 for 3 yrs at 7% interest semiannually and a 2nd Trust Deed from J F Jones to Joe Mernstein and Sarah . Mernstein payable on or before 3 yrs from April 11–1930 at 7% and secured by Land at Willows, Calif.

"The above mentioned Trust Deeds are for the sum of Fifteen Thousand five hundred dollars are accepted & taken at my own personal risk as I have no available money to Escrow or pay investigating charges. As G M Sherry suggested my having any one I care to have investigate for me, as G. M. & W. H. Sherry made it plain to me that they had neither saw the land or surrounding locations, and they would take no responsibility as to the true value of the Security, neither did they by act or deed persuade me to accept this deal, or make any representations whatsoever regarding property or notes. I am therefore making this deal with Walter Gates at my own risk and I have not paid any commission to the Sherry's for this deal.

"(Signed) Iva Poorman Yeoman."

"Glendale, Calif October 5th, 1931.

"This is to certify that I have received from Walter Gates Two Trust Deeds amounting to the sum of $15,500.00 for my equity in the Four flat located at 2472 Chestnut Ave Long Beach Cal

"That G. M. Sherry has done her work satisfactory in all detail and is therefore liberated from other work on this deal. She has fulfilled the terms of her agreements, and has finished her work as my Broker herein; and completed same and I am perfectly satisfied therewith in every and all respects and have given her a note for the commission and is secured by real property on any property that I may own at due date.

"(Signed) Iva Poorman Yeoman."

██ We are satisfied that the foregoing recitals of what the evidence was and the excerpts therefrom are sufficient to have warranted the jury in finding that the relationship of prin-

cipal and agent existed between respondent and Mrs. Sherry at the time the transaction in question was negotiated and consummated. ■ It is settled also that a misrepresentation of value may be a misrepresentation of a matter of fact, and not the mere opinion of a broker. In the case of *Reton* v. *J. D. Millar Realty Co.*, 132 Cal. App. 708, at page 711 [23 Pac. (2d) 419], the court says: "Appellant contends that the representations as to value were merely matters of opinion, and hence not actionable . . . It is true that a bare and naked statement as to value is ordinarily deemed the opinion of the party making the representation. (*Meeker* v. *Cross*, 59 Cal. App. 512 [211 Pac. 229] . . . ) On the other hand, such statement may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made. When it is such, it is like any other representation of fact, and may be a fraudulent representation warranting rescission. (*Crandall* v. *Parks*, 152 Cal. 772 [93 Pac. 1018]. . . . ) The representations as to value in the instant case are very similar to those made in the latter case. For instance, Nolan, the agent for appellant, stated to plaintiff: 'I can assure you that *I know that it is a fact* that this property is priced very, very reasonable, and in fact it is worth more than the company is asking for it.' Such representations as to value will warrant a rescission." We feel that the foregoing statement of the law is decisive of the question in this case.

■ The final point urged by appellants is that the judgment is invalid and must be set aside, because it is entered upon an erroneous and ambiguous verdict. The verdict in the case was as follows: "We, the jury in the above entitled action, find for the plaintiff Iva Poorman Yeoman and against the defendant Gertrude May Sherry and assess her damages in the sum of $3800.00. We further find for plaintiff and against the defendant Great American Indemnity Co. in the sum of $2000.00 . . . "

The judgment entered upon this verdict is as follows:

"Wherefore, by virtue of the law, and by reason of the premises aforesaid, it is ordered, adjudged, and decreed that said plaintiff Iva Poorman Yeoman have and recover from said defendant Great American Indemnity Co. the sum of $2000.00 and from defendant Gertrude May Sherry the sum of $3800.00 . . . "

The record discloses that the jury first brought in a verdict of $3,800 against both defendants. The court instructed the jury that it could not find against defendant Great American Indemnity Co. for more than $2,000. Pursuant to the court's instruction, the verdict herein quoted was returned, upon which the judgment was entered. ■ It is settled law in this state that a trial court has the authority and that it is its duty to make a judgment conform to the verdict, when the intention of the jury is clear from its language, considered in connection with the pleadings and evidence. (*Johnson* v. *Visher*, 96 Cal. 310, 314 [31 Pac. 106]; *Johnson* v. *Phenix Ins. Co.*, 152 Cal. 196, 200 [92 Pac. 182].) In the Visher case, *supra*, the court says at page 314: "And as a general rule, a party will not be heard to object to a verdict for the first time on appeal from the judgment, if it is susceptible of a construction which may have a lawful and relevant effect . . . "

The jury in this case undoubtedly intended to render a total judgment of $3,800 and to make appellant Indemnity Company responsible for $2,000 thereof. The judgment is not consistent with the verdict, but it can be modified so as to make it consonant with the verdict.

The judgment is affirmed with directions to the trial court to modify the same so that the total principal amount thereof will be $3,800, appellant Sherry to be responsible for the full amount thereof, and appellant Great American Indemnity Company to be responsible for $2,000 of the same. The appeal from the order denying a motion for a new trial is dismissed, as no appeal lies from such an order. Respondent to recover costs on appeal.

Houser, P. J., and York, J., concurred.