DON R. SAMPEN, Plaintiff-Appellant, v. STEFFAN DABROWSKI (BEDNAR) *et al.*, Defendants (Allstate Appraisal, Inc., Defendant-Appellee).

First District (6th Division)   No. 1—90—2647

Opinion filed December 13, 1991.

Don R. Sampen, *pro se*, of Martin, Craig, Chester & Sonnenschein, and Ralph Hardesty, of Hardesty & Wolf, both of Chicago, for appellant.

Elliot R. Schiff and Loretta M. Griffin, both of O'Connor, Schiff & Myers, of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Don R. Sampen, hired the defendant, Allstate Appraisal, Inc. (Allstate), to appraise a multi-unit apartment building the plaintiff anticipated buying. The defendant submitted an appraisal figure of $785,000. The plaintiff bought the building for $782,000. The property was worth between $500,000 and $550,000.

The plaintiff filed a complaint against Allstate and the sellers of the property. Counts XV through XVII concerned only the defendant. Count XV alleged appraiser malpractice; count XVI alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*); and count XVII alleged a breach of contract. The heart of all three counts is the allegation that the appraisal figure submitted by the defendant was "about one-third more than the actual fair market-value" of the building. Count XV was dismissed with leave to amend; and counts XVI and XVII were dismissed with prejudice. The sole issue in this appeal is whether counts XVI and XVII pleaded a cause of action. The facts we are about to recite are based on the allegations of the complaint which must be accepted as true. *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 503 N.E.2d 760.

Stefan Dabrowski and Karen Lieberman owned a 38-unit apartment building located at 6150 North Winthrop in Chicago. In the spring of 1986, the plaintiff began negotiating with Lieberman and Dabrowski to purchase the building. In June of 1986, the plaintiff hired the defendant to perform an appraisal of the property for a fee of $1,300. The plaintiff advised the defendant that he was a prospective purchaser of the property and that he would rely on the appraisal in determining whether to proceed with the purchase.

The defendant prepared a 33-page appraisal of the fair market value of the property. A copy of the appraisal report is attached to the complaint. The report estimated the fair market value of the property as of June 19, 1986, to be approximately $785,000.

The plaintiff executed a contract to purchase the property from Dabrowski and Lieberman for a price of $782,000. The fair market value of the premises as of the appraisal date was $500,000 to $550,000.

THE CONSUMER FRAUD ACT (Count XVI)

Section 2 of the Act provides as follows:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." Ill. Rev. Stat. 1989, ch. 121½, par. 262.

The defendant contends that the Act is not applicable for two reasons: The appraisal it provided to the plaintiff was an expression of opinion and not an actionable misrepresentation; and a real estate appraiser does not engage in "trade or commerce," as that term is used in the Act. The trial judge held that the Act did apply to a real estate appraiser, but that the appraisal was an expression of an opinion and not an actionable misrepresentation. We agree with the trial judge's conclusions. In our view, a real estate appraiser does engage in "trade or commerce," as that term is used in the Act. It has been held that the Act applies to a real estate broker. (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464; *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) In *Duhl,* it was held that a broker's representations of value might be actionable. There is no reason why representations of value by an appraiser might not also be actionable. The case relied upon by the defendant, *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007, is not in point; that case simply held that the Act did not cover legal services.

We do, however, agree with the defendant's contention that the appraisal report constituted an expression of an opinion, and not an actionable misrepresentation. The principal case relied upon by the plaintiff is *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267. In that case the plaintiff homeowners contacted the defendant real estate broker to assist them in the purchase of a new home. They informed the defendant that the price they could pay could be no greater than the price they received for the sale of their home. The defendant said that she had the professional skill

and competence to determine the market value of their present home, the price for which it could be sold and the speed with which it could be sold. The plaintiffs asked the defendant for her professional judgment, informing her that they had no knowledge of real estate values and were relying on her expertise. After inspecting the home the defendant told them that in her professional judgment, their home should be listed for $168,000 and that it would be sold very quickly for between $162,000 and $163,000. The defendant said that she had performed a great number of such appraisals over many years, that she had always been within 5% of the actual selling price and her representations as to the market value and speed of sale were correct. As further confirmation she had the president of her company appraise the home. She told the plaintiffs that the president was a "professional appraiser and had the skill and expertise to form a professional opinion as to *the precise price at which the home would sell.*" (Emphasis added.) 102 Ill. App. 3d at 486.

Later she told the plaintiffs that the president had appraised the home and that his professional judgment was that the home had a minimum market value of $158,000 and would sell for at least that amount. He had also said that the home would be sold very quickly. She gave the plaintiffs a brochure entitled "Seven Reasons You Should Consult a Realtor." That brochure stated in part:

"2. A REALTOR knows market value. When your property is priced right for the market, you can expect fast action—and full value. A REALTOR knows market value because he stays abreast of all real estate sales transactions as well as economic and social factors which affect property value." 102 Ill. App. 3d at 486.

In reliance on the representations made by the defendant, the plaintiffs purchased a new home. They engaged the defendant's company as the exclusive real estate broker to sell their home. The home was listed for $167,500. The selling price was reduced from time to time to $137,000 and the plaintiffs had still not received any offers. They obtained independent appraisals of the value of the home which, without exception, indicated that the home had been "grossly overpriced, and that the market value and price at which the home could be sold was at least $20,000 less than it had been represented to be by" the defendants. 102 Ill. App. 3d at 487.

The appellate court reversed an order dismissing the complaint charging a violation of the Act. The court recognized that generally a mere expression of opinion will not support an action for fraud

and that statements as to the value of property are often treated as mere expressions of opinion and, if so intended and understood, fraud may not be predicated thereon. The court added: "However, where the representation as to value is not a mere expression of opinion but is made as a statement of fact for the listener to rely upon, the representation is treated as a statement of fact and the speaker is bound thereby." (102 Ill. App. 3d at 489.) The court concluded that a fact finder could infer that the defendant intended that her representations be understood by the plaintiffs to be statements of fact rather than mere expressions of opinions.

The appellate court relied on four cases which we will discuss in order. The first was *Buttitta v. Lawrence* (1931), 346 Ill. 164, 178 N.E. 390. In that case the defendant was alleged to have entered a conspiracy with a broker to induce the plaintiff to exchange his property for property owned by the defendant and the broker; the plaintiff was also to receive some promissory notes. The defendant represented that the notes were good and that he would endorse them so that he would be liable on them. Some of the notes were barred by the statute of limitations; others were uncollectible; and the defendant endorsed the notes without recourse.

The supreme court rejected the defendant's argument that his statement that the notes were good and collectible was an expression of opinion and not of fact:

"Wherever a party states a matter which might otherwise be only an opinion *but does not state it as the expression of the opinion of his own* but as an affirmative fact material to the transaction, so that the other party may reasonably treat it as a fact and rely upon it as such, then the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation. Statements of value are common examples, and *where made in pursuance of a scheme on the part of the defendant to induce plaintiff to trade with him* such statements constitute fraud and deceit." (Emphasis added.) 346 Ill. at 173.

The second case was *Yeoman v. Sherry* (1935), 10 Cal. App. 2d 567, 52 P.2d 555. In *Yeoman*, the defendant broker had acted on behalf of the plaintiff on two previous occasions. On the second occasion, the plaintiff acquired an equity in a building. Thereafter, the defendant acted as a broker for the exchange of that equity for two promissory notes totalling $15,500 which were secured by trust deeds on 320 acres of land.

The plaintiff testified that she came to the defendant's office at the defendant's direction and that the defendant told her that there was a "guarantee" for the trust deeds in the sum of $16,000. When the plaintiff asked if the defendant would take the trust deeds, the defendant said that she wished she had enough money to get them. In response to other questions by the plaintiff, the defendant said that the plaintiff was going to like the deeds and that the property was worth $30,000. The defendant also told her that the trust deeds were as good as $15,500 in cash. An expert witness later testified that $5 an acre would be a "big price" for the property. (10 Cal. App. 2d at 570, 52 P.2d at 557.) Thus, the property the defendant importuned the plaintiff to accept as security was worth approximately one-tenth the amount due on the notes and approximately one-twentieth the amount the defendant said the property was actually worth.

The third case was *F.H. Smith Co. v. Low* (D.C. App. 1927), 18 F.2d 817. In that case, in addition to an expression of the value of the property involved, *the defendant made false representations to the plaintiff of future actions the defendants themselves would take.* The defendants also urged the plaintiff to accept the offer at once; otherwise, the plaintiff would have to pay a much higher price later. The district court spoke as follows:

> "The misrepresentations alleged in the declaration were actionable. They consisted in part of statements concerning existing facts and conditions. Some of these were statements of value, which generally are understood to be mere expressions of opinion. Such a statement, however, when made *'made under conditions which show that it was intended'* by one uttering it *'to be treated as an immediate factor inducing action,* and was made with knowledge that it would be accepted as a basis of action, instead of a mere element to be investigated before action, it becomes for all practical purposes a statement of fact.'* [Citations.]" (Emphasis added.) 18 F.2d at 819.

In the last case, *Mercer v. Parker* (1928), 124 Or. 89, 262 P. 948, the defendant broker was the owner of the property. The plaintiff told the defendant that she had no knowledge of the value of the property and was relying on the defendant's representation of value. The defendant admitted that he had asked the mortgagee on the property not to tell the plaintiff the price the defendant had paid for the property in a recent sale. He also told the mortgagee that, if the plaintiff called, not to quote any price; but, if the mortgagee felt she had to quote a price, to quote the price of $5,000,

which the defendant was asking of the plaintiff. He had paid $3,700. The Oregon Supreme Court held that, under the peculiar circumstances of the case, the representations made by the defendant were actionable as fraud.

The facts of *Duhl* and the cases cited in *Duhl* are far removed from the facts of the case before us. The defendant did not own the property or speak of guarantees; it did not make false representations as to its future course of conduct; it did not gain in any way from the fact the plaintiff bought the property; it did not misrepresent its own qualifications or any existing fact; it did not importune the plaintiff to buy property nor goad him into quick action; and it did not make any attempt to have someone else lie to the plaintiff.

The case upon which the defendant relies is *People ex rel. Hartigan v. Maclean Hunter Publishing Corp.* (1983), 119 Ill. App. 3d 1049, 457 N.E.2d 480, in which the court discussed whether an erroneous valuation may be a violation of the Act. The court examined the contents of a "Red Book," a publication containing used car valuations which were allegedly inaccurate and unreliable, and concluded that the valuations did not of themselves violate the Act, even though they were inaccurate. The court did determine, however, that the publisher's advertising of the book as "official" and a recognized authority with complete, impartial, accurate and current prices, *without informing subscribers that the valuations reported in the "Red Book" were subjective estimates,* could support a finding of a violation of the Act. The court expressly held, however, that "[i]f clearly labeled as an opinion a qualitative evaluation of worth is not a violation of the Act." (119 Ill. App. 3d at 1059.) For reasons we will explain, we conclude that the defendant's valuation was clearly labeled an opinion and that the defendant did not fail to inform the plaintiff that its appraisal represented its subjective "estimate."

■■ Contrary to the plaintiff's assertion, the defendant's appraisal report does not purport to be "an elaborate, systematic, objective and accurate analysis of the market value." Instead, the report is a correlation of data used to formulate a professional opinion of the value of the property. Among the data used were several comparable sales of property and the rental income of the subject property. That data was apparently provided to the defendant by the sellers of the property. During oral argument, the plaintiff's attorney told us that the rental income was misrepresented. Any misrepresentation came from the seller, not the defendant. Moreover, it appears that the rent figure for each apartment listed

was accurate. The problem apparently was in collecting it. There is no claim that the purchase price of the properties listed as comparable sales was inaccurate.

The transmittal letter accompanying the report begins with the following sentence: "In accordance with your instructions, we have inspected the above captioned property for the purpose of *estimating* its current Fair Market Value." The appraisal certificate states that the *"estimated* Fair Market Value of the subject property" is $785,000. The report's stated purpose was "to *estimate* the current Fair Market Value of the property." Even the definition of "fair market value" is stated as "[t]he price at which a property would *most probably* sell, if exposed to the market for a reasonable period of time in an 'as is' condition, where payment is made in cash or its equivalent." The report uses three approaches to estimate the market value of the property: the cost approach, the income approach and the market data approach. Under each of those three methods, the report lists the *"estimated* fair market value" using that approach "in round amount." The analysis and conclusion of the report states that "[a]fter adjusting the above data on the subject, we *estimate* the present value of the subject to be in the amount of $785,000." (All foregoing emphasis has been added.)

The words used in a contract are to be given their ordinary, natural and commonly accepted meanings unless it clearly appears that the parties intended to ascribe to them a peculiar or unusual meaning. (*First National Bank v. Mid-States Engineering & Sales, Inc.* (1981), 103 Ill. App. 3d 572, 431 N.E.2d 1052.) In repeated cases the word "estimate" has been held to be synonymous with "opinion." (See, *e.g., Clark Sanitation, Inc. v. Sun Valley Disposal Co.* (1971), 87 Nev. 338, 487 P.2d 337; *Klein v. Puritan Fashions, Inc.* (Mo. App. 1969), 439 S.W.2d 229; *Indiana Gas & Water Co. v. Williams* (1961), 132 Ind. App. 8, 175 N.E.2d 31.) In this case, it does not appear that the parties intended to ascribe a peculiar or unusual meaning to the word "estimate." For these reasons, we conclude that the appraisal report clearly informed the plaintiff that the valuation was a subjective estimate and thus an expression of an opinion; it was not an actionable misrepresentation.

■ Although not necessary to our opinion and not raised by the parties, we believe it appropriate to note that in 1982 the Act was amended. It is not now applicable to:

> "The communication of any false, misleading or deceptive information, provided by the seller of real estate located in Illinois, by a real estate salesman or broker licensed under

'The Real Estate Brokers License Act', unless the salesman or broker knows of the false, misleading or deceptive character of such information." Ill. Rev. Stat. 1983, ch. 121½, par. 270b(4).

One text writer opined that the Act was amended "[p]resumably in response to the real estate professionals' concern over *Beard*[1] and *Duhl*." Peterson, *Tort Claims By Real Estate Purchasers Against Sellers & Brokers: Current Illinois Common Law & Statutory Strategies*, 1983 S. Ill. U. L.J. 161, 179. See also *Warren v. LeMay*, 142 Ill. App. 3d at 572, 491 N.E.2d at 477.

We had previously held that there was no reason to distinguish between real estate brokers and real estate appraisers insofar as the "trade or commerce" language of the Act was concerned. In like manner, we see no reason to conclude that public policy, as expressed by the legislature, should restrict liability for real estate salesmen or brokers to misrepresentations of value knowingly made but may impose liability upon a real estate appraiser for making a good-faith misrepresentation of value. The plaintiff makes no claim here that the defendant made any misrepresentation which was not in good faith.

The order dismissing count XVI is affirmed.

## BREACH OF CONTRACT (Count XVII)

■ Stated briefly, count XVII alleged that the defendant breached his contract with the plaintiff by submitting an erroneous appraisal. The trial judge dismissed count XVII on the ground that the plaintiff's remedy lay in tort. He relied on *Duhl*, which the defendant cites in this court.[2]

In *Duhl*, the plaintiff sued for fraud, negligence, breach of contract and for a violation of the Act. As noted, the appellate court

---

[1]In *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448, the court held that the Act was applicable to real estate sales transactions and that real estate purchasers might sue for violations of the statute even though they did not technically fall within the statutory definition of consumer. The court also held that the state of mind was immaterial under the statute; hence, good-faith misrepresentations involving merely a failure to exercise due care could be the basis of liability.

[2]The defendant also argues that count XVII was properly dismissed on the ground that the appraisal report is dated July 17, 1986, and that the plaintiff bound himself to purchase the property before receiving the appraisal report. The pleadings, which must be construed liberally in favor of the plaintiff, may be construed to mean that the plaintiff was bound contractually after receiving the appraisal report. The trial judge did not rely on this ground. We find it has no merit.

upheld the complaint under the Act. The court also upheld the complaint's causes of action for fraud and negligence, but it refused to uphold an action for breach of contract with this observation:

> "The plaintiffs have cited no cases for their contention that false representations can constitute a breach of such a contract and we have found none. According to the complaint, the defendants agreed to value the property and did indeed value the property. If they erred in the value, the remedy properly lies in tort." *Duhl*, 102 Ill. App. 3d at 488.

The plaintiff does not maintain that *Duhl* was decided incorrectly; he does maintain that *Duhl* is distinguishable. We do not believe that it is. Consequently, we affirm the order of the trial judge dismissing count XVII.

The judgment of the circuit court is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and McNAMARA, J., concur.