DANIEL WEINBERGER *et al.*, Plaintiffs-Appellants, v. BELL FEDERAL SAVINGS AND LOAN ASSOCIATION, f/k/a Bell Savings and Loan Association, Defendant-Appellee.

First District (5th Division)   No. 1—92—2958

Opinion filed May 6, 1994.—Rehearing denied June 16, 1994.

COUSINS, J., dissenting.

Robert Marks and William V. Saracco, both of Marks, Marks & Kaplan, Ltd., of Chicago, for appellants.

James M. Rogan, Jill A. Dougherty, and John C. Sciaccotta, all of Kelly, Olson, Rogan & Siepker, of Chicago, for appellee.

PRESIDING JUSTICE MURRAY[1] delivered the opinion of the court:

The facts are stated as follows:

"Daniel and Mary Lou Weinberger (Plaintiffs) filed a four-count class action suit alleging breach of mortgage contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act and Deceptive Business Practices Act [*sic*], (Ill. Rev. Stat. 1991, ch. 121½, pars. 261 through 272; 815 ILCS 505/1 *et seq.* (West 1992)). After a hearing on Bell Federal Savings and Loan Association's (Defendant's) 2—619 motion to dismiss (Ill. Rev. Stat. 1991, ch. 110, par. 2—619; 735 ILCS 5/2—619 (West 1992)), the trial court reconsidered an earlier 2—615 motion to dismiss (Ill. Rev. Stat.

---

[1]Justice Gordon recused himself from the case and Presiding Justice Murray has replaced him by reading the briefs and listening to the tape of the oral argument.

1991, ch. 110, par. 2—615; 735 ILCS 5/2—615 (West 1992), which he [*sic*] had previously denied and dismissed plaintiffs' third amended complaint with prejudice. Plaintiffs appealed."

For the following reasons, we conclude that the trial court's order must be reversed and the cause remanded.

In their appeal, the Weinbergers charge the trial court was in error in dismissing their third amended complaint against defendant Bell Savings and Loan Association (Bell). Plaintiffs request that the cause be remanded with directions to proceed further. (It is to be noted that no class has been as yet certified in the case.)

Plaintiffs' third amended complaint filed February 8, 1991, alleges, among other things, the following:

"(1) That Bell improperly escrowed an additional one-sixth of Weinbergers' estimated tax and insurance assessment as authorized by the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.A., sec. 2601, for mortgages created after 1974. Weinbergers allege that their mortgages were created prior to 1974 and that such increase in their mortgages were violative of their mortgage agreement with Bell. Their mortgages were executed before the said RESPA."

We believe the law compels a reversal and remandment to the trial court's dismissal of the Weinbergers' complaint for a determination by the trial court of what Bell and its mortgagors intended by the following provision of their mortgage contract dated September 16, 1965, and prior to the enactment of the Federal Real Estate Settlement Procedure Act. (See 12 U.S.C.A. § 2601 *et seq.* (West 1989).)

"To provide for payments of taxes, assessments and insurance premiums, stipulated to be paid hereunder, the Mortgagor shall deposit with the Mortgagee on each monthly payment date an amount equal to one-twelfth of the annual taxes and assessments levied against said premises and 1/12th premium on all such insurance, as estimated by the Mortgagee. All such deposits as made are pledged as additional security for the payment of the principal mortgage indebtedness. If default is made in the payment of said deposits, the Mortgagee may, at its option, charge the same to the unpaid balance of the mortgage indebtedness and the same shall bear interest at the same rate as the principal mortgage indebtedness. As taxes and assessments become due and payable and as insurance policies expire, or premiums thereon become due, the Mortgagee is authorized to use such deposits for the purpose of paying taxes or assessments, or renewing insurance policies or paying premiums thereon. In the event any deficit shall exist or the deposits are so reduced that the remaining deposits together with the monthly deposits will not provide sufficient funds to pay the then current calendar year's estimated taxes or the estimated

insurance premium on the last day of said year, the Mortgagee may, at its option, either declare immediately due and payable or add to the unpaid balance of the mortgage indebtedness secured hereby such a sum which shall, together with the remaining deposits and monthly deposits, provide sufficient funds to pay one year's estimated taxes or insurance premiums on the last day of said year."

The trial court did not indicate what that provision means when the mortgagee tries to extract an additional one-half of one-sixth from the mortgagor in addition to that provided by the above which both the mortgagor and mortgagee agreed to.

The plaintiffs' third amended complaint alleges in paragraphs 11 and 12 the following:

"11. The named Plaintiffs are informed and believe and upon such information and belief state the fact to be that subsequent to the adoption of the Act, (Federal Real Estate Procedure Act), the Defendant, notwithstanding the provision of the Illinois Savings and Loan Act and in breach of its then existing mortgage loan contract with the named Plaintiffs, required the named Plaintiffs to pay to Defendant, and the said Plaintiffs to avoid penalties under the contract did pay, monthly deposits not only of the one-twelfth (1/12th) of the ensuing annual taxes as estimated by the Defendant, but also an additional sum of one-twelfth (1/12th) of one-sixth (1/6th) thereof, not as a part of Defendant's said estimated annual taxes but rather as a new and separate addition to the tax escrow.

12. The uncertified class which the named Plaintiffs represents [*sic*] consist of persons who like the named Plaintiffs made mortgage loans from the Defendant secured by like promissory notes and mortgage indentures containing the same tax deposit provisions as contained in Exhibits 1 and 2 hereof and who, as were the named Plaintiffs, were also required by the Defendant to make monthly tax deposits which included not only an amount equal to 1/12th of the annual taxes and assessments levied against their mortgaged premises as estimated by the Defendant, but also an additional sum equal to 1/12th of 1/6th of the said estimated annual taxes and assessments upon said properties not as part of Defendant's said estimate but rather as a new and separate addition to the tax escrow, and/or other additional sums, none of which were or are provided for in the mortgage indenture or otherwise."

The trial court held no fact hearing as to the parties' intent and merely granted Bell Savings and Loan's motion to dismiss pursuant to section 2—615 of Illinois Civil Practice Law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—615.) Such a motion admits not only the facts alleged

in a complaint, but all reasonable inferences that can be drawn therefrom. *Davies v. Martel Laboratory Services, Inc.* (1989), 189 Ill. App. 3d 694, 392 N.E.2d 72.

The trial judge, in granting Bell's motion, described the amount over the one-twelfth estimate provided by the above mortgage and its provision as a "cushion." A "cushion" as used in connection with taxes is defined by Webster's Third New International Dictionary as "something serving to mitigate the effects of economic disturbances." Webster's Third New International Dictionary 559 (1986).

Nothing in the mortgage contract or the law prior to the cited Federal Act provides for a "cushion" in the tax escrow for the mortgagor to minimize the effect of ever increasing taxes. Nothing in plaintiffs' complaint or inferences drawn from its allegation authorizes Bell to extract such a cushion. As a matter of fact, if there is an inference arising from the latter Federal enactment, it is to the contrary. Illinois procedural law requires a reversal of the trial court's dismissal based on Bell's motion and remandment to the trial court for determination of the factual issue presented by plaintiffs' complaint, *i.e.*, "what the parties intended in the mortgage provisions relating to tax escrows executed prior to the Federal Procedures Act." 12 U.S.C.A. § 2601 *et seq.* (West 1989).

For the above reason, the cause is reversed and remanded with directions that the third amended complaint be reinstated and proceeded in accordance with this opinion.

Reversed and remanded.

McNULTY, J., concurs.

JUSTICE COUSINS, dissenting:

In the majority opinion, my esteemed colleagues write that Illinois procedural law requires a reversal of the trial court's dismissal and remandment to the trial court for determination of the *factual issue* presented by the plaintiff's complaint, *i.e.*, "what the parties intended in the mortgage provisions relating to tax escrows executed prior to the Federal [Real Estate Settlement] Procedures Act." (262 Ill. App. 3d at 1050.) However, in my opinion, the case is one involving construction of an unambiguous contract. It is my belief that the intent of the parties to the mortgage is clear from the provision of the mortgage which requires monthly deposits of an amount equal to *"one-twelfth of the annual taxes *** as estimated by the mortgagee."* (Emphasis added.) An estimate is "an evaluation or judgment." (Webster's Third New International Dictionary 779 (1986).) The majority opinion ignores Webster's definition and, in

essence, interprets an "estimate" in this case to be a "fact." Perforce, I dissent.

In this case, Daniel and Mary Weinberger (plaintiffs) filed a four-count class action suit alleging breach of mortgage contract, unjust enrichment, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121¹/₂, pars. 261 through 272 (now 815 ILCS 505/1 *et seq.* (West 1992))) (Illinois Consumer Fraud Act). After a hearing on Bell Federal Savings and Loan Association's (defendant's) section 2—619 motion to dismiss (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992))), the trial court reconsidered an earlier section 2—615 motion to dismiss (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))) which it had previously denied and dismissed plaintiffs' third amended complaint with prejudice. Plaintiffs appealed alleging that the trial court erred in granting defendant's motion to dismiss.

The class action suit was filed by plaintiffs against defendants on their own behalf and on behalf of other like borrowers who, prior to 1975, obtained loans from defendant secured by promissory notes and mortgage indentures. They alleged that defendant improperly escrowed an additional one-sixth of their estimated tax and insurance assessments as allowed under the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 *et seq.* (1989)) for mortgages created after 1974. Plaintiffs also allege that as their mortgage was created prior to 1974, such increase in escrow was violative of their mortgage agreement with defendant.

Pertinent here are sections A(3) and A(9) of the mortgage contract. Section A(3) provided that the mortgagors were

> "[t]o pay when due all taxes and assessments levied against said property or any part thereof under any existing or future law, and to deliver receipts for such payments to the Mortgagee promptly upon demand."

Section A(9) provided that plaintiffs were

> "[t]o provide for payments of taxes, assessments and insurance premiums, stipulated to be paid hereunder, the Mortgagor shall deposit with the Mortgagee on each monthly payment date *an amount equal to one-twelfth of the annual taxes and assessments levied against said premises and one-twelfth of the annual premium on all such insurance, as estimated by the Mortgagee.* \*\*\* In the event any deficit shall exist or the deposits are so reduced that the remaining deposits together with the monthly deposits will not provide sufficient funds to pay the then current calandar [*sic*] year's estimated taxes or the estimated insurance premium on the last day of said year, the Mortgagee may, at its option, ei-

ther declare immediately due and payable or add to the unpaid balance of the mortgage indebtedness secured hereby such a sum which shall, together with the remaining deposits and monthly deposits, provide sufficient funds to pay one year's estimated taxes or insurance premiums on the last day of said year." (Emphasis added.)

In December 1974, Congress enacted RESPA, which placed limitations on the amount mortgagees could require as escrow deposits for purposes of paying taxes and insurance. Section 2601 of the Act provided:

"(b) It is the purpose of this Act to effect certain changes in the settlement process for residential real estate that will result—
* * *
(3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance ***."

In addition, section 2609(2) of RESPA provides:

"[L]ender[s], in connection with a federally related mortgage loan, may not require the borrower or prospective buyer—
* * *
(2) to deposit in any such escrow account in any month beginning with the first full installment payment under the mortgage a sum (for the purpose of assuring payment of taxes, insurance premiums and other charges with respect to the property) in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are reasonably anticipated to be paid on dates during the ensuing twelve months which dates are in accordance with the normal lending practice of the lender and local custom, provided that the selection of each such date constitutes prudent lending practice, plus (B) such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and others [*sic*] charges to be paid on dates, as provided above, during the ensuing twelve-month period: *Provided, however,* That in the event the lender determines there will be or is a deficiency he shall not be prohibited from requiring additional monthly deposits in such escrow account to avoid or eliminate such deficiency." (Emphasis in original.)

Plaintiffs contend that, after the adoption of RESPA in 1974, defendant applied the RESPA standard in determining the amount of escrow deposits required to be paid by plaintiffs for the purpose of paying their taxes. Plaintiffs assert that this constituted a breach of their mortgage contract.

During oral argument, counsel for plaintiff-appellant asserted that RESPA was adopted for the benefit of the mortgagee and not for the benefit of the mortgagor. However, the actual provisions of RESPA establish that this assertion is 100% incorrect. The preamble for the Act indicates the exact opposite. RESPA was enacted for the benefit of borrowers such as the plaintiffs. It is ironic that plaintiffs contend, in the case at bar, that the RESPA provisions benefit the lender.

In my estimation, RESPA is really a "red herring" in this case. In my estimation, this case is unusual. After scrutinizing the complaint, the trial court dismissed it, stating:

"It is unnecessary to reach the merits of Bell's [defendant's] 2—619 motion. The Third Amended complaint is subject to dismissal under Section 2—615 for failure to state a cause of action. The third amended class action complaint is bereft of facts indicating that Bell increased the escrow by a sum greater than 1/12 of the *estimated* real estate tax and insurance assessments, as set forth in the subject mortgage agreement. This alone is sufficient to warrant dismissal under 2—615, as the Weinbergers are not representative of the putative class. It is clear under the terms of the mortgage that Bell may escrow a sum that is 1/12 of the Lender's *estimate* of what the tax and insurance assessments will be for any year. The terms of the mortgage give Bell the right to estimate tax and insurance assessments, and to escrow a 'cushion' amount that exceeds their estimate by 1/12th. Plaintiffs have plead [*sic*] no facts indicating that the amount escrowed by Bell exceeded 1/12th of Bell's estimate of what those assessments would be for any year. Given Bell's contractual right to estimate assessments, the enactment of RESPA in 1974 neither expanded nor restricted the Lender's contractual rights vis-a-vis the tax escrow."

Here, after receiving affidavits filed pursuant to section 2—619, the trial court reconsidered its prior denial of defendant's section 2—615 motion to dismiss and issued a memorandum opinion and order in which the court wrote that it was unnecessary to reach the merits of defendant's section 2—619 motion and dismissed the third amended complaint under section 2—615 for failure to state a cause of action. The court did not refer to any affidavits in support of its decision to dismiss under section 2—615.

In my opinion, the dismissal by the trial court should be affirmed.

In determining whether a motion to dismiss was properly granted, reviewing courts must accept as true pertinent facts alleged in the complaint and contained in appended exhibits. *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 298, 503 N.E.2d 760; *Michael Reese Hospital & Medical Center v. Chicago HMO, Ltd.* (1990), 196 Ill. App. 3d 832, 835, 554 N.E.2d 472.

The trial court, in ruling on a motion to dismiss for failure to state a claim, may consider only the allegations in the complaint and may not consider supporting affidavits offered by the movant. (*Senese v. Climatemp, Inc.* (1991), 222 Ill. App. 3d 302, 313, 582 N.E.2d 1180.) However, in ruling on a motion to dismiss a complaint for failure to state a cause of action, the trial court must take all properly pleaded facts and reasonable inferences therefrom as true, and a complaint not alleging sufficient facts to demonstrate a cause of action may not be remedied by liberal construction. *Treister v. American Academy of Orthopaedic Surgeons* (1979), 78 Ill. App. 3d 746, 757, 396 N.E.2d 1225.

On a motion to strike, a court may determine whether or not, as a matter of law, facts alleged in a complaint constitute a breach of an agreement. *Kos v. Catholic Bishop* (1942), 317 Ill. App. 248, 255, 45 N.E.2d 1006.

Words used in a contract are to be given their ordinary, natural, and commonly accepted meanings unless it clearly appears that the parties intended to ascribe to them a peculiar or unusual definition. *Sampen v. Dabrowski* (1991), 222 Ill. App. 3d 918, 925, 584 N.E.2d 493.

Moreover, contractual intent must be determined from the contract as a whole rather than particular words or phrases. (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 381, 370 N.E.2d 188.) And, where a contract is clear, the intent of the parties is determined therefrom. *La Throp*, 68 Ill. 2d at 384.

Substantial averments of fact must be alleged in stating a cause of action, and liberal construction cannot supply fatal deficiencies such as the lack of necessary factual allegations. *Denkewalter v. Wolberg* (1980), 82 Ill. App. 3d 569, 572, 402 N.E.2d 885.

Plaintiffs do argue that the phrase "as estimated by the Mortgagee," as found in section A(9) of the mortgage contract, did not permit defendant to require plaintiffs

> "to deposit any additional sums into that escrow either by way of an increase of the estimate, an increase in the percentage of that estimate to be deposited, or by any other separate, additional or different 'cushion.' "

However, an "estimate" is synonymous with an "opinion." (*Sampen*, 222 Ill. App. 3d at 925.) "Estimate" implies that subjective criteria will be used in ascertaining the approximated amount.

Since an estimate of annual taxes is an opinion and not a fact, in instances involving loans and previous tax bills which have been received on the subject property, it can be the amount of the previous tax bill or it can be the amount of the previous tax bill plus an additional one-twelfth or an additional one-sixth.

In my opinion, the trial court was correct in determining that RESPA is herein inapposite because the language contained in the mortgage contract gave defendant the authority to estimate plaintiffs' real estate taxes, placed no limitations on this authority, and did not prescribe a particular method for estimating the taxes. The mortgage provision afforded defendant flexibility in estimations.

No basis for reversal exists by virtue of the trial court's use of the word "cushion" when setting forth his reasons for granting defendant's motion to dismiss, and indicating:

> "The terms of the mortgage give Bell the right to estimate tax and insurance assessments, and to escrow a 'cushion' amount that exceeds their estimate by 1/12th." (Emphasis added.)

The use of the word "cushion" by the court makes sense. A mortgagee does not know exactly what will be the next real estate tax bill on mortgaged property. However, based upon a pattern of assessments of properties in the township where the mortgaged property is located, the mortgagee might estimate that the taxes for an ensuing year will be the same as were the taxes for the previous year. On the other hand, the mortgagee might estimate that the taxes could exceed those for the previous year by one-twelfth or one-sixth even though such an estimate might provide a "cushion." The clause "as estimated by the mortgagee" affords discretion and, therefore, permits a "cushion."

In summary, no factual issues of intent exist in this case. The intent of the parties is determinable from the mortgage contract itself. The trial court has already construed the mortgage contract. The trial court has determined that the

> "third amended class action complaint is bereft of facts indicating that Bell increased the escrow by a sum greater than 1/12 of the *estimated* real estate tax and insurance assessments as set forth in the subject mortgage agreement. *** It is clear under the terms of the mortgage that Bell may escrow a sum that is 1/12 of the Lender's *estimate* of what the tax and insurance assessments will be for any given year." (Emphasis added.)

In my estimation, the trial court did not err in holding that the third amended complaint fails to set forth sufficient facts to allege a cause of action for breach of contract.

For the foregoing reasons, the trial court should be affirmed.